**FRITO–LAY, INC., Appellant (Defendant Below),**

v.

**Toni CLOUD, in her own name and by her next friend and parents, Doyle and Cindy Cloud, Appellee (Plaintiff Below),**

**and**

**The State of Indiana, By and Through the Department of Highways of the State of Indiana, Appellee (Defendants Below).**

**No. 10A04–8909–CV–00413.[1]**

Court of Appeals of Indiana, First District.

April 15, 1991.

1. This case was reassigned to this office on January 2, 1991.

David W. Crumbo, Christopher R. Fitzpatrick, Brown, Todd & Heyburn, New Albany, for appellant.

Joseph A. Colussi, Merritt K. Alcorn, Eckert, Alcorn, Goering & Colussi, Madison, for appellee.

ROBERTSON, Judge.

Frito–Lay, Inc. appeals the judgment in the amount of $924,000.00 in favor of the plaintiffs, Toni Cloud and her parents, Doyle and Cindy Cloud, entered upon a jury verdict after a thirteen (13) day trial. The Clouds brought suit in negligence against Frito–Lay and the State of Indiana seeking compensation for the serious personal injuries Toni suffered in an automobile accident involving Toni and a Frito–Lay employee, Robert Hammond, who was driving Frito–Lay's delivery van at the time of the accident. The Clouds alleged that Hammond was negligent in his operation of Frito–Lay's van. Frito–Lay stipulated that if Hammond were found liable, it would be liable under the theory of respondeat superior. The Clouds also sued the State of

Indiana for the negligent construction and maintenance of the intersection where the accident took place. The jury found Toni Cloud to be 49% at fault, the State 30% at fault, and Frito–Lay 21% at fault for the accident. The State—being exempt from the principles of comparative fault—is exonerated from liability by Cloud's contributory negligence.

The jury found that Cloud's damages amounted to $4,400,000.00. Frito–Lay's 21% of this amount results in the verdict against it in the amount of $924,000.00.

We have found reversible error in the trial court's instruction of the jury concerning both the issues of liability and damages. Therefore, we must reverse and remand to the trial court for a new trial on all issues. We also address some of the other issues raised by Frito–Lay because we anticipate that they will resurface on the retrial of this matter.

FACTS

The facts in the light most favorable to the verdict indicate that early in the morning of November 6, 1986, sixteen (16) year-old Toni Cloud attempted to pull out from County Road 1000 onto State Road 56 in Jefferson County, Indiana. After stopping at the stop sign, she failed to yield and pulled out onto the preferred State highway directly into the path of Hammond's Frito–Lay van traveling within the speed limit. Hammond's Frito–Lay van struck Cloud's car injuring both Cloud and Hammond.

At the time of the accident, Toni was growing up on a farm in western Jefferson County, Indiana with her parents and younger sister. She was accustomed to farm work and farm life. She was active in her high school and was a junior varsity cheerleader. She was a good student who planned to go to college, study English, and become a high school English teacher. She was driving herself to school the morning of the accident.

The injuries Toni suffered in the accident were nearly fatal. She was comatose for many months. She sustained a number of broken bones in her pelvis and left leg which have left her with a shorter left leg and a marked limp. She suffers from paralysis on the left side of her body which distorts and disfigures her facial muscles and left eye. She has undergone two brain surgeries which have resulted in the removal of significant portions of her brain. She has undergone and continues to undergo physical and emotional rehabilitation. She has suffered severe learning and memory disabilities and requires twenty-four-hour supervision. She can never be employed and requires residential care for the rest of her life. She suffers from a seizure disorder, a violent temper, and constant mood swings. Presently, she is being cared for by her parents.

The accident happened at the intersection of County Road 1000 and State Road 56. It is virtually undisputed that this intersection is extremely dangerous. The intersection is located in the bottom of a valley. From Toni Cloud's vantage point at the time of the accident, there was only one-tenth of a mile of unobstructed view of oncoming traffic from the East, the direction from which Hammond came. A stop sign controls the entry of traffic from CR 1000 onto SR 56. However this stop sign is set approximately 25 feet back from the intersection.

Nearly every fact related to the accident is vigorously disputed. However, the evidence most favorable to the verdict indicates that the accident took place at approximately 7:15 on the morning of November 6, 1986. Hammond was driving his Frito–Lay delivery van westbound on SR 56 approaching the intersection with CR 1000. The sun had not yet risen. Although it had rained the night before, the asphalt road was dry. It was foggy or misty in the valley where the intersection is located. There are no stop or yield signs on SR 56 at the intersection with CR 1000. The posted speed limit is 55 mph. Advisory signs on SR 56 indicate the existence of an intersection and suggest, but do not mandate, a reduced speed of 40 mph. Hammond had on his headlights, parking lights, and "running lights" (amber colored

lights across the top of his van) at the time of the accident.

Toni was traveling South on CR 1000 toward the intersection with SR 56. She stopped her car at the stop sign, drove the additional 25 feet up to the intersection and stopped again. She then attempted to turn left or East onto SR 56. She pulled out directly into the path of Hammond's oncoming van. The van struck Toni's car directly behind the driver's door. Toni has no memory of the accident.

It is difficult to determine from the briefs which accident scenario represents the evidence in the light most favorable to the verdict. We believe the following scenario represents the Clouds' assertions. The absence of skid marks on the highway indicates that Hammond was inattentive at the wheel and did not use his brakes before the collision. Cloud's accident reconstruction expert placed Hammond's speed at 50 mph at the time of impact. Evidence was presented that a reasonably prudent Frito–Lay van driver would not have been driving in excess of 40 mph and that had Hammond been driving 40 mph he could have easily avoided the accident by—among other actions—swerving to the right around Toni's car.

Additional facts are supplied as necessary.

## DECISION

### I.

Whether the trial court erred by refusing to instruct the jury regarding the sudden emergency doctrine?

Frito–Lay tendered an instruction regarding the sudden emergency doctrine.[2] The trial court refused to give it or any other instruction on the doctrine to the jury. It is undisputed that the instruction tendered by Frito–Lay represents a correct statement of the law. Frito–Lay's tendered instruction reads as follows:

I instruct you that the duty imposed upon the defendant's driver Robert Hammond did not require him to use every possible precaution to avoid the accident with the plaintiff; nor that Mr. Hammond should have employed any particular means, which it may appear after the accident would have avoided the accident; nor was Mr. Hammond required to make accidents impossible. Mr. Hammond was only required to use such reasonable precaution to prevent the accident as would have been adopted by ordinarily prudent persons under the circumstances as they appeared prior to the accident.

If you find that Mr. Hammond was placed in a position of danger by the negligent act of the plaintiff, that Mr. Hammond did not himself create the position of danger by his own negligence, and the appearance of danger or peril was so sudden that Mr. Hammond was required to take immediate and rapid action without time to deliberate as to the better course to pursue, then you should not hold Mr. Hammond as strictly accountable as one situated under more favorable circumstances. Negligence is not necessarily chargeable to one on his failure to exercise the greatest prudence or best judgment in such a case. All that is required of a person suddenly placed in peril is that he act only with that degree of care which an ordinarily prudent person would exercise under like conditions.

And, if you should find that Mr. Hammond did, under such facts and circum-

---

**2.** Cloud argues that all of Frito–Lay's claimed errors with respect to the jury instructions have been waived because Frito–Lay failed to object to the jury instructions until after the jury was instructed and had retired to deliberate. The record is manifestly clear that the trial judge entertained argument concerning the instructions off the record, made up his mind as to how he would instruct the jury, and provided that counsel could place their objections on the record after the jury had been instructed and had retired to deliberate. The parties discussed and agreed to this minor deviation from standard procedure. Frito–Lay carefully placed its objections on the record at the agreed-upon time. We hold that the Clouds' counsels' express agreement to this minor deviation in standard procedure estops the Clouds from asserting that Frito–Lay's claimed errors have been waived.

stances, act as an ordinarily reasonable and prudent person would act under same or similar circumstances, when being confronted by such an emergency, then and in that event the plaintiff cannot recover from the defendant Frito-Lay, Inc. herein, and your verdict should be for the defendant Frito-Lay, Inc. and against the plaintiff. (Citations omitted)

The sudden emergency doctrine relates to the standard of care required of a driver of a motor vehicle confronted with a sudden emergency and defines the conduct to be expected of a reasonably prudent person under the circumstances. *Compton v. Pletch* (1990), Ind.App., 561 N.E.2d 803, *opinion modified on rehearing*, (1991), Ind.App., 565 N.E.2d 771, *trans. pending*. The doctrine of sudden emergency deals with potentially negligent conduct of an actor after an emergency arose. *Sullivan v. Fairmont Homes, Inc.* (1989), Ind.App., 543 N.E.2d 1130, *trans. denied.* The sudden emergency doctrine is an affirmative defense, and the trial court has the duty to instruct the jury concerning the defense if there is any evidence to support its application. *Compton*, 561 N.E.2d 803. When the trial court determines that the conditions of the sudden emergency doctrine have been met, it must instruct the jury that it must find the actor not negligent if the jury were to find that a reasonable person confronted with the same circumstances might have reacted in the same manner, even though another course of conduct might have been more judicious or safer or might have avoided the accident. *Sullivan*, 543 N.E.2d 1130. In *Sullivan*, we noted that in the trial court's determination of whether the sudden emergency instruction should be given, the evidence must be interpreted in the light most favorable to the party asking for the instruction and that the trial court has the duty to give the instruction if there is any evidence supporting it and the doctrine supports the defense of the party to be charged with negligence. *Id.*

Cloud asserts the trial court properly refused to instruct the jury regarding the sudden emergency doctrine because the doctrine is not appropriate in a negligence case governed by principles of comparative fault. Cloud is mistaken. In Indiana, the sudden emergency doctrine has survived the advent of comparative fault. *Compton*, 561 N.E.2d 803.

We believe the evidence in the present case and Frito-Lay's theory of defense supports the giving of the sudden emergency instruction and hold that the trial court erred by refusing to give Frito-Lay's tendered instruction to the jury. The evidence in the present case regarding the cause of the accident and the propriety of the conduct of both drivers was hotly contested. Hammond testified that he was driving within the posted speed limit of 55 mph. Upon cresting the hill before the intersection, he saw Cloud's car and took precautions by easing up on the accelerator. The low gearing of the van's transmission and the slight incline approaching the intersection caused the van to slow down. Hammond testified further that Cloud stopped at the stop sign some twenty-five feet before the intersection but crept forward and did not stop again before entering the highway. This factual dispute was crucial because it goes to the speed at which Cloud entered the highway and consequently the amount of time Hammond was given to react. If Cloud pulled out from a dead stop, she would have entered the highway at a slower speed and Hammond would have had more time to react and possibly avoid the accident. Hammond testified that when Cloud suddenly pulled out in front of him, he had no chance to avoid the accident and all he could do was hit the brakes.

The Clouds' theory of negligence against Hammond—in a nutshell—was that Hammond was inattentive and was driving too fast under the circumstances. The Clouds asserted that a reasonably prudent driver would have been more attentive and would have been been driving (or would have slowed to) 40 mph in approaching the inter-

section where Toni's car was waiting to pull out with its left turn signal blinking. They asserted further that a reasonably prudent attentive driver traveling 40 mph could have swerved to the right and thus would have avoided the accident. They argue that in spite of Cloud's undisputed failure to yield the right of way, Hammond's negligence caused the accident.

The evidence supporting Hammond's version of events indicates that he was reasonably attentive and—upon seeing Cloud's car—slowed the van down to 40 mph and continued to observe Cloud's car. However, when Cloud suddenly pulled out in front of him there was nothing he could do to avoid the accident. He hit the brakes but was nevertheless unable to avoid the accident by steering to the right.

The issue of the appropriateness of Hammond's conduct in this emergency situation created by Cloud's failure to yield the right of way was of paramount importance in determining whether Hammond was at fault at all or, if he was partly at fault, what part of the fault was properly allocated to him. The issue of whether Hammond could have—or should have—steered to the right or taken any other evasive action to avoid the accident was central to his defense and reveals the necessity of instructing the jury regarding the sudden emergency doctrine. We conclude that the evidence presented at trial imposed a duty upon the trial court to instruct the jury concerning the sudden emergency doctrine and the trial court committed reversible error by refusing to do so. Therefore, we must reverse and remand for a new trial on the issue of liability.

## II.

Whether the trial court erroneously instructed the jury regarding damages by enabling it to award Cloud damages related to Toni's inability to have a normal social life or to engage in normal recreational activities as a separate element in addition to damages related to her future mental suffering?

■ Frito–Lay objected to the Clouds' instruction given to the jury concerning damages which reads—in pertinent part—as follows:

If you find from a preponderance of all of the evidence in this cause that Defendant, Frito–Lay, Inc., Defendant, The State of Indiana, or both are liable to Plaintiff, Toni Cloud, for negligent injury you must then determine the amount of money which would fairly compensate Toni Cloud for those elements of damage you find were proved by the evidence. In determining these damages you may consider the following elements:

A. The nature and extent of the injuries and whether they are temporary or permanent;

B. The physical pain and mental suffering experienced and reasonably certain to be experienced in the future as a result of the injuries;

C. The value of the loss or impairment of earning capacity;

D. The reasonable expense of necessary medical care, treatment and services, nursing care and rehabilitation services and institutional living, and the reasonable expense of future medical care, treatment and services, nursing care, rehabilitation services and institutional living;

E. Disfigurement and/or deformity resulting from the injuries;

F. The effect of any disability on Toni Cloud's ability to have a normal social life and engage in normal recreational activities in the time since the injury and in the future.

\* \* \* \* \* \*

Frito–Lay argues the trial court committed error by giving the above instruction because the damages described in paragraph F are embodied in the concept of "enjoyment of life" damages which may not be considered as an element of damages separate from the "future mental suffering" damages described in paragraph B above. Frito–Lay asserts that because "enjoyment of life" damages are a component of "mental suffering" damages, the above instruction which permits the jury to award separate damages for each errone-

ously permits the Clouds a duplicitous recovery.

Juries may consider a loss to the quality of life only in connection with or a factor of other damages such as permanence, pain and suffering, or mental anguish. *Marks v. Gaskill* (1989), Ind.App., 546 N.E.2d 1245, *affirmed* (1990), Ind., 563 N.E.2d 1284.[3] It is error to instruct the jury on the loss of quality and enjoyment of life as an element of damages separate from other elements of damage, such as pain and suffering or permanency of injury. *Seifert v. Bland* (1989), Ind.App., 546 N.E.2d 1242. Instructing the jury on the loss of quality and enjoyment of life as a separate element in addition to elements of damage such as pain and suffering or permanency of injury permits an erroneous duplication of damages. *Id.* The way to avoid such a duplicitous recovery is to instruct the jury to consider, as one element, 'the nature and extent [or permanency] of the injury, *as it affects* the quality and enjoyment of life.' *Id.*, 546 N.E.2d at 1244, 1245 (concurring opinion of J. Staton).

The concept of "loss of enjoyment of life" includes such items as the "deprivation of freedom of action and social intercourse" and are embraced within the term "mental suffering." *Marks*, 546 N.E.2d 1245, 1248. Also included within the concept of "loss of enjoyment of life" are the terms "lack of personal enjoyment," "deprivation of freedom of action, social meeting, and intercourse," and an "inability to enjoy life in the manner accustomed to." *Id.*

We agree with Frito–Lay that paragraph F of the above instruction which permits the jury to award damages for the "effect of any disability on Toni Cloud's ability to have a normal social life and engage in normal recreational activities" describe damages included within the concept of "enjoyment of life." We hold that the above instruction which permits the jury to award Cloud "loss of enjoyment of life" damages described in paragraph F as a separate element in addition to the "future mental suffering" damages described in paragraph B constitutes error as permitting a duplicitous recovery. Therefore, because we have already found an error concerning the issue of liability, we must reverse and remand to the trial court for a new trial on the issue of damages as well as liability.

### III.

Whether the trial court abused its discretion by denying Frito–Lay's motion to bifurcate the trial?

■ Frito–Lay asserts the trial court erred by denying its motion to bifurcate and try separately the issues of liability and damages pursuant to Ind.Trial Rule 42(B) & (C). In a related issue, Frito–Lay argues the trial court abused its discretion

---

3. The same day our supreme court handed down *Marks,* 563 N.E.2d 1284, it handed down *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 1279 as a companion case. In *Canfield,* all five supreme court Justices agreed with the general proposition that juries should not be instructed concerning "loss of enjoyment of life" damages as a separate element of recovery. Two Justices, C.J. Shepard and J. DeBruler, were of the opinion that instructing the jury as to "loss of enjoyment of life" damages as a separate element of recovery was harmless error under the facts of *Canfield.* J. Dickson concurred in result because he was of the opinion that no error resulted in the giving of the instruction. Two Justices, J. Givan and J. Pivarnik, were of the opinion that the instruction which permitted a double recovery of "loss of enjoyment of life" damages was not harmless error.

In *Marks,* 563 N.E.2d 1284, our supreme court noted that an error involving a jury instruction on the loss of "quality and enjoyment of life" was insufficient to require reversal. Nevertheless, the court affirmed our decision reversing the jury verdict on damages because of an additional error in the case concerning the issue of liability.

Frankly, the harmless error analysis of *Canfield* escapes our understanding. We also believe that when an error touches the issue of liability but the verdict on damages is otherwise valid, we are to reverse and remand for a new trial upon the issue of liability alone and leave the verdict on damages undisturbed. *Compton v. Pletch* (1991), Ind.App., 565 N.E.2d 771.

In any event, in the present case we have error touching the issue of liability in addition to an error regarding an instruction on "enjoyment of life" damages. Therefore, under our supreme court's decision in *Marks,* 563 N.E.2d 1284, we must reverse and remand for a new trial on both the issues of liability and damages.

by denying its motion for a mistrial based on the grounds that the pathos and sympathy inevitably experienced by the jury upon hearing the evidence related to Cloud's damages unjustly prejudiced Frito–Lay's defense on the issue of liability.

The avoidance of prejudice is more than sufficient reason for a separate trial. Ind. Trial Rule 42; 3 W. HARVEY, INDIANA PRACTICE § 42.3, at p. 193 (1988). However, a separate trial should not be granted solely upon the movant's speculation that it might be prejudiced by certain testimony. *Farm Bureau Mutual Ins. Co. v. Dercach* (1983), Ind.App., 450 N.E.2d 537. If an issue can be conveniently and expeditiously resolved, a separate trial may be ordered in the interest of judicial economy. 3 W. HARVEY at p. 193. If the proof of damages will be complicated and costly the issue of liability could first be separately tried. *Rickenbacher Transportation, Inc. v. Pennsylvania Railroad Co.*, (S.D.N.Y. 1942), 3 F.R.D. 202. This was the specific purpose in adding subdivision (C) to T.R. 42. 3 W. HARVEY at p. 193. However, a federal court has observed that while the separation of trials can result in judicial economy when the defendant prevails on the issue of liability (by obviating the need for a trial on damages), the defendant must first convince the court that it has a persuasive argument on the question of liability in order to justify the potential risk and expense of two trials. *Fetz v. E & L Truck Rental Co.*, (S.D.Ind., 1987), 670 F.Supp. 261.

Frito–Lay has mounted a compelling argument in favor of the bifurcation of the issues of liability and damages in the present case. It asserts that the jury was inundated with evidence that inevitably created sympathy for sixteen (16) year old, junior varsity cheerleader, now gravely disabled accident victim, Toni Cloud. Such heart-rending evidence included testimony regarding Toni's youth, social nature, lost career opportunities, the gruesomeness and severity of the injuries to her brain and body, and the severe and permanent neuropsychological and economic effects of these injuries. Frito–Lay asserts further that the order of the presentation of evidence regarding liability and damages was

intertwined for no reason other than to evoke the jury's sympathy for the Clouds and prejudice the jury's ability to render a verdict in favor of Frito–Lay on the issue of liability. For example, immediately after the accident reconstruction experts' testimony, the Clouds presented the videotaped deposition of a neurosurgeon who described the process of cutting into Toni's skull and removing part of her brain. Frito–Lay has attempted to demonstrate actual prejudice by presenting uncontroverted affidavits stating that two jurors cried during the tearful testimony of Toni's mother, Cindi Cloud.

We are of the opinion that Clouds' arguments against bifurcation almost entirely amount to mere subterfuge. Before trial, the Clouds' counsel argued that separate trials were inappropriate because the issues of liability and damages were totally intertwined. The Clouds' counsel suggested that the evidence of the severity of Toni's injuries would prove the speed of Hammond's van and the manner in which the vehicles impacted with each other. The Clouds' counsel has abandoned such an argument on appeal. We note that no evidence was presented at trial that purported to prove the cause of the accident through Toni's injuries.

We are similarly unimpressed with the Clouds' argument that the planned presentation of their evidence and the coordination of their witnesses makes the bifurcation of the issues of liability and damages inappropriate. *All* of the Clouds' medical evidence was admitted into evidence in the form of depositions either read into evidence or shown on videotape.

Finally, Clouds' counsel argues on appeal that the bifurcation of this trial was inappropriate because the jury was entitled to hear the evidence related to Toni's brain damage to explain how she has no memory of the accident. However, weighing the potential for prejudice against the merits of this argument cuts in favor of bifurcation. The jury did not need to hear days of medical, neuropsychological, and economic testimony before it could understand that Toni Cloud's injuries left her with no memory of the accident. Frito–Lay proposed a limiting instruction or a stipulation that the

jury be informed that Toni had no memory of the accident as a result of the injuries she suffered in the accident.

We cannot imagine a case more appropriate for bifurcation than the case at bar. We do not believe the Clouds would suffer any prejudice if the issues of liability and damages were tried separately. On the other hand, we do believe that the potential for the prejudice of Frito–Lay's defense amounts to much more than mere speculation on our part. On the contrary, we refuse to believe that the jurors from Clark County, Indiana are made of such stone that they can reasonably be expected to detach their emotions from the horrible tragedy suffered by Toni Cloud and her family during their deliberations on the issue of liability.

Moreover, we are of the opinion that the bifurcation of the issues of liability and damages in the present case has great potential for maximizing judicial economy. There is no serious dispute that Frito–Lay's defense on the issue of liability is very strong. Toni Cloud failed to yield to the traffic on a preferred highway. Even the earlier trial, inundated with the potential for sympathetic prejudice and permeated with errors militating toward a result in Frito–Lay's favor, resulted in an allocation of fault on Toni's part just 1.1% shy of complete exoneration for Frito–Lay.

Had we not been required to reverse this case, we would be extremely reluctant to invade the province of the trial court's discretion on the issue of bifurcation. However, we must reverse this case on both the issues of liability and damages for errors unrelated to bifurcation. Let us not permit the long, exhausting trial below to have been in vain. The trial below provides us with the benefit of hindsight that was unavailable to the trial court when it faced the initial decision of whether or not to bifurcate this trial. Based on the above analysis and the benefit of this hindsight, we conclude that the denial of a motion for the bifurcation on the issues of liability and damages in the retrial of this case would constitute an abuse of discretion.

Professor Harvey noted that the authority vested in our court pursuant to Ind. Appellate Rule 15 to fashion relief granted on appeal authorizes us to grant a separate trial on any issue. 3 W. HARVEY, INDIANA PRACTICE § 42.3, at p. 194 (1988). We believe this authority permits us to order the bifurcation of issues on retrial. Therefore, pursuant to our authority under A.R. 15(N), we order that the issues of liability and damages be bifurcated upon the retrial of this case.

### IV.

Whether the trial court erred in instructing the jury regarding the rights of motorists to assume that other drivers will obey traffic laws and the respective obligations of Hammond and Cloud to maintain a proper lookout?

Frito–Lay raises several issues with regard to the trial court's instruction of the jury regarding Hammond's right to assume that Cloud would not disregard the stop sign and pull out in front of him and the respective obligations of both Hammond and Cloud to maintain a proper lookout. Frito–Lay complains that the instructions given the jury inadequately or erroneously instruct the jury regarding the corresponding duties between a motorist on a preferred highway and one on a nonpreferred County Road. Frito–Lay also argues its tendered instructions on this subject were erroneously refused. Because we must reverse and remand for a new trial for unrelated reasons, we need not analyze these questions with precision. For the purposes of clarification and brevity, we will consolidate these issues.

The case of *Berg v. Glinos* (1989), Ind. App., 538 N.E.2d 979, involved an automobile accident in which the motorist on a nonpreferred road (whose entrance upon the preferred road was controlled by a stop sign), failed to yield the right of way to the motorist on the preferred road. We held that, unless a party has notice to the contrary, he has the right to assume others who owe him a duty of reasonable care will exercise such care. *Id.* The exercise of ordinary and reasonable care does not require the preferred driver to be constantly aware of the actions of the nonpreferred drivers in plain view. *Id.* Motorists are not required to anticipate extraordinary

hazards or to constantly expect or search for unusual dangers. *Id.* The motorist on the preferred road is under no duty to anticipate that the motorist on the nonpreferred road who is stopped at a stop sign will pull out in front of his vehicle. *Id.*

The case of *Anderson v. Pre–Fab Transit Co., Inc.* (1980), Ind.App., 409 N.E.2d 1157 involved an accident at a traffic signal. The defendant failed to stop at the red light and collided with the plaintiff who had a green light. We held that if the plaintiff was not on notice that the other motorist would violate the law, he had no duty to look both directions on the nonpreferred road to see if any approaching traffic was going to violate the law. In so holding, we relied on *Wallace v. Doan* (1973), 155 Ind.App. 316, 292 N.E.2d 820 which contains the exact holding for a stop sign case. We noted further that the preferred driver has the right to assume the non-preferred driver will obey the traffic laws and is not required to proceed overly cautiously into an intersection and to be cognizant of everything in plain view. *Id.* Finally, we noted that if we were to require the preferred driver to check the oncoming traffic on the non-preferred street we would probably cause more accidents than we would prevent. *Id.*

We have examined the instructions given to the jury and the instructions tendered by Frito–Lay. As a general proposition, we agree with Frito–Lay that the trial court has failed to adequately instruct the jury regarding the respective rights and obligations of the preferred driver and the nonpreferred driver. Therefore, we suggest that on retrial the trial court instruct the jury regarding the law of *Berg* and *Anderson* as set out above.

Based on the above, we reverse and remand for proceedings consistent with this opinion.

Judgment reversed.

RATLIFF, C.J., and BUCHANAN, J., concur.