

FILED

May 18 2018, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert D. Brown
Sarah M. Cafiero
KENNETH J. ALLEN LAW GROUP, LLC
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

J. Patrick Schomaker
SMITH, ROLFES & SKAVDAHL
COMPANY, LPA
Cincinnati, Ohio

# IN THE
# COURT OF APPEALS OF INDIANA

Calvin B. Yates,

*Appellant-Plaintiff,*

v.

Rebecca Hites,

*Appellee-Defendant.*

May 18, 2018

Court of Appeals Case No.
44A03-1710-CT-2459

Appeal from the LaGrange
Superior Court

The Honorable Lisa M. Bowen-Slaven, Judge

Trial Court Cause No.
44D01-1601-CT-1

**Bailey, Judge.**

# Case Summary

Calvin B. Yates ("Yates") filed a civil lawsuit against Rebecca Hites ("Hites") for personal injuries arising out of a motor vehicle accident. Yates appeals the judgment, following a jury trial, in favor of Hites. Yates raises only the following issue on appeal: whether the trial court abused its discretion when it gave the jury an instruction on sudden emergency.

We reverse and remand for a new trial.

# Facts and Procedural History

In the early morning of January 31, 2014, Hites, who lives in Shipshewana, received a phone call from her friend, Dave Smith ("Smith"). Smith asked Hites if she would pick him up because his car had broken down on County Road 43. While traveling westbound on U.S. 20 on her way to assist Smith, Hites suddenly lost control of her vehicle, causing her vehicle to swerve across the centerline of U.S. 20 and strike Yates' eastbound vehicle. Yates sustained injuries as a result of the crash.

On August 10, 2015, Yates filed a complaint against Hites, alleging that she negligently and recklessly drove her vehicle so as to cross the centerline, crash into his vehicle, and cause him personal injuries. Prior to the jury trial, Hites requested a special jury instruction regarding "sudden emergency." Appellant's App. Vol. II at 136-139. However, Yates moved *in limine* to exclude testimony, evidence, or argument that Hites was confronted with a sudden emergency. *Id.*

at 94. Yates also moved *in limine* to exclude any testimony or argument that Hites "drove over 'black ice' or that 'black ice' somehow caused the motor vehicle crash," since Hites had stated in her deposition that she had not seen any black ice on the roadway and that her "contention that there was black ice on the road [was] just an assumption on [her] part." *Id*. at 93, 117-18.[1] On September 12, 2017, the trial court granted Yates's motions *in limine* regarding black ice and sudden emergency. And, on September 20, the trial court rejected Hites's proposed instruction regarding sudden emergency.

[5] The case proceeded to jury trial on September 26-28. At trial, Hites testified that, at the time of year when she was driving (i.e., January), "there's a potential for snow and ice to be on the roadway," Tr. Vol. III at 57, and a "possibility that the roads could be slippery," *id*. at 55. She also testified that the day prior to the accident, i.e., January 30, the "weather had been particularly bad and hard for cars." *Id*. at 55. However, she testified that, while she was driving on January 31, 2014, it was not snowing, raining, or sleeting, and the roads "for the most part were clear." *Id*. at 54-55. She testified that visibility was "fine," *id*. at 54, and she had not seen any ice on the roads that morning, Tr. Vol. IV at 48. Hites testified she was traveling at 30 miles per

---

[1] Although the Exhibit Index prepared by the trial court reporter indicates that Hites's deposition was admitted into evidence as Exhibit 19 at page 51 of transcript volume III, we find no such admission; rather, the transcript shows only that Yates "tendered" Exhibit 19. Tr. Vol. III at 51. And, while relevant portions of Hites's deposition transcript are contained in the record as exhibit attachments to Yates' Motion *In Limine*, App. Vol. II at 93, 117-18, that document also was never entered into evidence. Therefore, we cannot consider Hites's deposition on appeal. *See, e.g.*, *Cochran v. Rodenbarger*, 736 N.E.2d 1279, 1283 (Ind. Ct. App. 2000).

hour on U.S. 20, although the speed limit was 50 miles per hour. *Id.* at 45; Tr. Vol. III at 56. She also testified that, while she was driving that day, she had both hands on the steering wheel and her eyes on the road, and that she was not "doing anything at all that might have distracted [her] from driving." Tr. Vol. IV at 48. She testified that the vehicle she was driving was equipped with "hands free or Bluetooth capabilities" for using a cellular phone. *Id.* at 45.

[6] Yates introduced into evidence the AT&T records of Hites's cellular telephone calls on January 31, 2014. Plaintiff's Ex. 26, Ex. Vol. VI. Those records demonstrated that Hites placed a five-minute telephone call to Smith at 8:53 a.m.; a two-minute call to her husband, William Hites Jr. ("William"), at 9:08 a.m.; a one-minute phone call to Suzanne Frazier ("Suzanne"), the owner of the car Hites was driving, at 9:10 a.m.; and a two-minute phone call to Suzanne's husband, James Frazier ("James"), at 9:11 a.m. At trial, Hites testified that she did not remember making any telephone calls in the moments before the crash, Tr. Vol. III at 65, at the time of the crash, *id.* at 69-70, or after the crash, *id.* at 70. In fact, Hites testified she did not remember any of the events immediately following the crash. However, she testified that she did not dispute the accuracy of the AT&T records in Exhibit 26.

[7] When Yates asked Hites at trial whether she had called her husband at 9:08 a.m. "to let him know that [she] had stopped at the gas station and used the bank card to gas up," Hites testified that, although she did not remember calling anyone before the crash, Tr. Vol. III at 65, it was "probably" true that she had called her husband for that reason, *id.* at 50. However, William testified that

Hites had called him a "little after nine o'clock in the morning" on that day to tell him that she had been "in an auto accident." Tr. Vol. IV at 35. And Suzanne also testified that the phone call she received from Hites that morning was after the crash; she stated that Hites called her to tell her about the crash, and that she had not talked to Hites on that day before that call. *Id.* at 105-06.

[8] Hites testified she suddenly lost control of the vehicle on January 31. She stated that, as the rear end of the vehicle slid left, she "tried to counter-steer." *Id.* at 44. Yates also testified that, when he saw Hites's vehicle coming toward him in his lane, "the driver attempted to correct by making a rapid sharp turn to the right," before her vehicle "fishtailed" and struck his vehicle. Tr. Vol. III at 206.

[9] Master Trooper Marc Leatherman of the Indiana State Police ("Trooper Leatherman") did not witness the crash, but he arrived at the scene of the crash at 9:13 a.m. He testified that he was told by Doug VanVooren ("VanVooren"), an eye-witness to the crash, that it appeared to VanVooren that Hites "was going too fast for the existing road conditions that morning." *Id.* at 81-82. Trooper Leatherman testified that "there were quite long stretches of U.S. 20 that were covered in ice that morning," and the ice was "black" so that "you wouldn't know it until … your vehicle came upon it." *Id.* at 89. Trooper Leatherman believed the accident happened at 9:13 a.m., but testified that "[i]t may very well have" happened before 9:08 a.m. *Id.* at 87. He testified that, after completing his investigation of the crash, he concluded that Hites had been "driving at a speed too fast for the existing weather conditions that day." *Id.* at 83-84.

[10] At the close of evidence, but before closing arguments, Hites renewed her request that the trial court give her previously-tendered jury instruction regarding sudden emergency. Hites noted that Yates's own witness, Trooper Leatherman, had testified that there was black ice on the roadway at the time of the crash, thereby providing evidence supporting a sudden emergency instruction. The trial court agreed. Over Yates's objection, the trial court granted Hites's request and instructed the jury as follows:

## FINAL INSTRUCTION #2

Defendant claims she was not at fault because she acted with reasonable care in an emergency situation. Defendant was not at fault if she proves the following by the greater weight of the evidence:

(1) she was faced with a sudden emergency;

(2) she did not cause the emergency;

(3) she did not have enough time to consider her options; and

(4) she acted as a reasonably careful person would act when facing a similar emergency, even if a different course of action might later seem to have been a better choice.

Appellant's App. at 40. The court also gave the following relevant portions of an instruction regarding negligence:

## FINAL INSTRUCTION #1

* * *

Plaintiff, CALVIN B. YATES, claims Defendant, REBECCA HITES, was negligent. Negligence is the failure to use reasonable care. A person may be negligent by acting or failing to act. A person is negligent if he does something a reasonably careful person would not do in the same situation or fails to do something a reasonably careful person would do in the same situation.

To recover on this claim, the Plaintiff must prove by a preponderance of the evidence that:

1. Defendant acted or failed to act in any one or more of the following ways:

   a. Moved at an unreasonable speed;

   b. Did not keep a proper lookout;

   c. Failed to maintain control of her vehicle; and or

   d. Drove while distracted by the use of a cell phone;

2. Defendant's act or failure to act was negligent; and

3. Defendant's act or failure to act was a proximate cause of Plaintiff's claimed injuries; and

4. Plaintiff suffered damages as a result of the injuries.

* * *

*Id*. at 39.

[11] The jury returned a verdict in favor of Hites.  This appeal ensued.

# Discussion and Decision

## Standard of Review

[12] Yates contends that the trial court erred when it gave the jury a final instruction regarding sudden emergency.

> The manner of instructing a jury is left to the sound discretion of the trial court.  *Callaway v. Callaway*, 932 N.E.2d 215, 222 (Ind. Ct. App. 2010).  Its ruling will not be reversed unless the instructional error is such that the [instruction] misstates the law or otherwise misleads the jury.  *Id*.  Jury instructions must be considered as a whole and in reference to each other.  *Id*. at 222–23.  In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the tendered instruction is covered by the other instructions that are given.  *Id*. at 223.  To determine whether sufficient evidence exists to support an instruction, we will only look to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom.  *Foddrill v. Crane*, 894 N.E.2d 1070, 1078 (Ind. Ct. App. 2008), *trans. denied*. Finally, "when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Id*. (citations omitted).

*Kimbrough v. Anderson*, 55 N.E.3d 325, 339 (Ind. Ct. App. 2016), *trans. denied*. If there is any evidence to support the instruction, it was properly given. *E.g.*, *Faulk v. Northwest Radiologists, P.C.*, 751 N.E.2d 233, 241 (Ind. Ct. App. 2001), *trans. denied*.

## Sudden Emergency Doctrine

[13] Our Supreme Court has summarized the law regarding the "sudden emergency" doctrine:

> In a negligence cause of action, the sudden emergency doctrine is an application of the general requirement that one's conduct conform to the standard of a reasonable person. The emergency is simply one of the circumstances to be considered in forming a judgment about an actor's fault. The doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances. The basis of the doctrine is that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation. In Indiana, a defendant seeking a sudden emergency instruction must show that three factual prerequisites have been satisfied: 1) the defendant must not have created or brought about the emergency through his own negligence; 2) the danger or peril confronting the defendant must appear to be so imminent as to leave no time for deliberation; and 3) the defendant's apprehension of the peril must itself be reasonable.

*Willis v. Westerfield*, 839 N.E.2d 1179, 1184 (Ind. 2006) (quotations and citations omitted). A trial court "has a duty to instruct the jury concerning [the sudden emergency] defense if there is any evidence to support its application." *Compton v. Pletch*, 561 N.E.2d 803, 807 (Ind. Ct. App. 1990), *adopted on transfer*, 580 N.E.2d 664 (Ind. 1991).

[14] Yates maintains that the evidence did not support giving the sudden emergency instruction,[2] and we agree. Moreover, we find that the erroneous giving of the instruction was prejudicial to Yates.

### No Sudden Emergency

[15] In determining whether an instruction on sudden emergency is appropriate, the court must first determine exactly what the sudden emergency was. *Collins v. Rambo*, 831 N.E.2d 241, 246 (Ind. Ct. App. 2005). Hites's sudden emergency defense is based entirely upon her theory that she suddenly came upon black ice that was not visible, and that driving on the black ice caused her to lose control of her vehicle. However, the record is completely devoid of evidence that Hites's vehicle drove over black ice. Hites herself never testified that she drove over black ice. Rather, she testified that the roads were not icy that day and that she never saw any ice. And when she was asked by her lawyer whether she even experienced the sensation of hitting a patch of ice, she replied only: "I

---

[2] Yates does not dispute that the sudden emergency instruction correctly stated the law, nor does he contend the instruction was covered by other instructions. *Kimbrough*, 55 N.E.3d at 339.

remember down – all the way up and to that point from my home until the point of the accident. And not having an issue. And then all of sudden my rear-end goes left, so." Tr. Vol. IV at 48.

[16] The only evidence regarding the existence of black ice is Trooper Leatherman's testimony that "there were quite long stretches of U.S. 20 that were covered in ice that morning," and the ice was "black" so that "you wouldn't know it until … your vehicle came upon it." Tr. Vol. III at 89. However, Trooper Leatherman testified that he did not witness the accident. Moreover, he never testified that Hites did, in fact, drive over black ice, nor did he express a belief that black ice is what caused the accident. Rather, he testified that, following his investigation, he concluded that Hites had been driving at a speed too fast for the existing weather conditions that day.

[17] While the trial court was required to interpret the evidence in the light most favorable to Hites when deciding whether to give her requested instruction on sudden emergency, *Frito-Lay, Inc. v. Cloud*, 569 N.E.2d 983, 987 (Ind. Ct. App. 1991), there simply was no evidence supporting the existence of a sudden emergency in this case.[3] Rather, Hites's contention that black ice created a sudden emergency is pure speculation. *Cf. Compton*, 561 N.E.2d 803, 807-08

---

[3] Moreover, as we noted in *Collins*, a sudden emergency cannot exist for a defendant motorist who did not perceive the emergency until after the collision. 831 N.E.2d at 246; *see also Taylor v. Todd*, 439 N.E.2d 190, 193 (Ind. Ct. App. 1982) (citing *Baker v. Mason*, 242 N.E.2d 513, 515 (Ind. 1968)) ("Without the perception of sudden danger, there is no impairment of judgment and no need for the sudden emergency instruction."). The evidence established that Hites was not aware of the existence of black ice prior to the collision.

(discussing cases where evidence of a sudden emergency existed). Therefore, the trial court abused its discretion when it gave the sudden emergency jury instruction.

### *Prejudicial Error*

[18]     The giving of an erroneous instruction on sudden emergency does not necessarily constitute reversible error. *Baker v. Mason*, 242 N.E.2d 513, 516 (Ind. 1968). Rather, as our Supreme Court has most recently stated, such an error is reversible only where the party seeking a new trial shows a reasonable probability that his or her substantial rights have been adversely affected. *Penn Harris Madison School Corp. v. Howard*, 861 N.E.2d 1190, 1195 (Ind. 2007); *see also Kimbrough*, 55 N.E.3d at 339. And "where an instruction presents a correct statement of law, but no evidence supports it, the objecting party is generally unharmed by the instruction." *Id.* at 1197 (citing *Baker*, 242 N.E.2d at 515). However, as we noted in *Simmons v. Erie Ins. Exchange*, 891 N.E.2d 1059, 1070-73 (Ind. Ct. App. 2008), the Supreme Court has also held that "[a]n erroneous instruction merits reversal if it could have formed the basis for the jury's verdict." *Id.* at 1071 (quoting *Fleetwood Enters., Inc. v. Progressive N. Ins. Co.*, 749 N.E.2d 492, 495 (Ind. 2001)). As in *Simmons*, "we need not resolve the conflict as to the proper standard under which we analyze whether an improper instruction necessitates reversal, as we conclude that the giving of the instruction in this case is prejudicial and requires reversal under any of the standards identified above." 891 N.E.2d at 1072.

[19] This court has found prejudice from the erroneous giving of sudden emergency instructions in several cases. *See, e.g.*, *Collins*, 831 N.E.2d at 244-45; *Lovings v. Cleary*, 799 N.E.2d 76, 78-79 (Ind. Ct. App. 2004), *trans. denied*. However, in those cases, the sudden emergency instruction read, in relevant part, as follows:

> In this case, if you find from the evidence that the defendant was confronted with a sudden emergency in the sliding of the vehicle and that the defendant then pursued a course of action that an ordinarily prudent person would have pursued when confronted with the same or similar emergency, then you may not assess negligence to the defendant.

*Lovings*, 799 N.E.2d at 78. In both cases, we held that instruction to be prejudicial to the substantial rights of the plaintiff because it precluded the jury from assessing fault to the defendant regardless of his/her possible negligence leading up to the alleged emergency, and it did not inform the jury that the defendant had the burden of proving a sudden emergency. *Collins*, 831 N.E.2d at 250; *Lovings*, 799 N.E.2d at 79.

[20] Unlike the instructions in *Collins* and *Lovings*, the instruction in the instant case, which was the pattern jury instruction on sudden emergency,[4] did require that

---

[4] Ind. Model Civ. Jury Inst. 931 states:

[Plaintiff][Defendant] claims [he][she] was not at fault because [he][she] acted with reasonable care in an emergency situation. [Plaintiff][Defendant] was not at fault if [he][she] proves the following by the greater weight of the evidence:

(1) [he][she] was faced with a sudden emergency;

(2) [he][she] did not cause the emergency;

(3) [he][she] did not have enough time to consider [his][her] options; and

the jury make a determination as to whether or not Hites's negligent action caused the alleged emergency. Indiana courts have found that similarly-worded sudden emergency instructions that were erroneously given did not affect the plaintiff's substantial rights. *E.g.*, *Baker*, 242 N.E.2d at 515-16 (holding that a similarly-worded, erroneously-given instruction was not prejudicial because it required the jury to either find the instruction inapplicable if it was not supported by any evidence, or, if applicable, simply apply the normal negligence standard to an emergency situation);[5] *Taylor v. Todd*, 439 N.E.2d 190, 193 (Ind. Ct. App. 1992) (reaching the same conclusion regarding a similarly-worded sudden emergency instruction). Thus, an erroneously given but properly worded sudden emergency instruction "has rarely been considered reversible error" in the absence of other, additional errors.[6] *Taylor*, 439 N.E.2d

---

(4) [he][she] acted as a reasonably careful person would act when facing a similar emergency, even if a different course of action might later seem to have been a better choice.

[5] Given the overlap between a sudden emergency instruction and standard negligence instructions, it is difficult to ascertain the usefulness and necessity of the sudden emergency instruction. We note that, although our Supreme Court has so far declined to express an opinion regarding the desirability of the instruction, *Willis*, 839 N.E.2d at 1186 n.4, other states have abolished the instruction on grounds that may be applicable here. *See, e.g.*, *Bedor v. Johnson*, 292 P.3d 924, 928-30 (Colo. 2013) (abolishing the instruction due to its minimal utility and potential to mislead the jury). We believe that Indiana's pattern sudden emergency instruction, while an accurate statement of the law that requires the jury to consider the defendant's actions leading up to the alleged emergency, nevertheless suffers from the potential to mislead the jury into applying a reduced standard of care and/or unduly focusing its attention on the defendant's actions during and after the emergency rather than on the totality of the circumstances. *Id*. And we believe that the sudden emergency instruction is unnecessary as the "rule requiring reasonable care is sufficient to take into consideration the excitement and confusion which normally accompany the emergency situation." *Knapp v. Stanford*, 392 So.2d 196, 199 (Miss. 1980) (citation and quotation omitted). However, pursuant to the doctrine of stare decisis, the sudden emergency doctrine is still applicable in Indiana. *See Willis*, 839 N.E.2d at 1186; *Compton*, 561 N.E.2d at 807.

[6] *See, e.g.*, *Estate of Dyer v. Doyle*, 870 N.E.2d 573, 584 (Ind. Ct. App. 2007) (holding giving of sudden emergency instruction reversible error where trial court also erroneously allowed evidence of "faked left syndrome" upon which alleged emergency was based), *trans. denied*.

at 194; *see also Penn Harris*, 861 N.E.2d at 1197 (citing *Baker*, 242 N.E.2d at 515) (emphasis added) ("[W]here an instruction presents a correct statement of law, but no evidence supports it, the objecting party is *generally* unharmed by the instruction.").

[21] Here, as in *Baker* and *Taylor*, the erroneously-given sudden emergency instruction, together with the instruction on negligence, would not have precluded the jury from considering whether Hites's actions leading up to the alleged emergency were negligent and caused the alleged emergency; therefore, the giving of the instruction, alone, would not have been prejudicial to Yates. However, unlike in *Baker* and *Taylor*, the record here discloses that, in closing arguments, Hites's lawyer extensively argued the application of the sudden emergency doctrine to justify Hites's presence in Yates's traffic lane and thereby avoid liability. Tr. Vol. IV at 148-166. Therefore, even though the jury should have found the sudden emergency instruction inapplicable due to a lack of evidence to support it and therefore disregarded that instruction, *Baker*, 242 N.E.2d at 515, it is much more likely that the jury did improperly consider and rely upon the sudden emergency instruction in reaching its verdict, thereby causing prejudice to Yates. *See Buhring v. Tavoletti*, 905 N.E.2d 1059, 1068 (Ind. Ct. App. 2009) (holding that an erroneously-given instruction was prejudicial error under either the *Penn Harris* or *Fleetwood Enters.* standards because "the matters discussed in the instructions at issue were emphasized to the jury, and the likelihood that the matters were discussed and impacted the jury's verdict is significant.").

# Conclusion

Because there was no evidence of the existence of a sudden emergency, the trial court erred in giving the sudden emergency instruction. Moreover, because Hites's closing argument put so much emphasis on the sudden emergency doctrine, it is likely that the jury improperly considered and relied upon the sudden emergency instruction in reaching its verdict for Hites. Therefore, we reverse and remand for a new trial. *See, e.g.*, *Collins*, 831 N.E.2d at 250.

Reversed and remanded for a new trial.

Crone, J., and Brown, J., concur.