Carmen COLLINS, Appellant–Plaintiff,

v.

Pauline RAMBO, Appellee–Defendant.

No. 45A04–0411–CV–591.

Court of Appeals of Indiana.

July 26, 2005.

Jeffrey Oliveira, Hawk P.C. Kautz, Merrillville, for Appellant.

Matthew D. LaTulip, Harold G. Hagberg, Hagberg LaTulip, Schererville, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Carmen Collins appeals the denial of her motion to correct error following a three-day jury trial. We reverse.

### Issue

Collins raises one issue: whether the trial court abused its discretion and committed reversible error when it gave a sudden emergency instruction.

### Facts and Procedural History

On the morning of January 19, 1999, Collins was driving to work in her 1998 Ford Explorer when she approached the intersection of I–65 and Highways 12/20 (also known as 4th/5th Avenues) in Gary, Indiana. Collins' vehicle entered a left-turn lane behind four or five other vehicles, and she waited for a left-turn arrow. Behind Collins' vehicle was a 1995 Grand Am driven by Pauline Rambo and more vehicles in line to turn left. When the green left-turn arrow illuminated, Collins and the other turning traffic proceeded through the intersection. However, a "recklessly" driven van came from another direction, disregarded a yield sign, and forced itself into the left-turning traffic entering I–65. Tr. at 134. The van's maneuver prompted Collins and those in front of her to "slam on their brakes," honk their horns, and stop suddenly. *Id.* at 79, 128. Rambo did not observe the van around Collins' Explorer. Rather, Rambo saw Collins' vehicle suddenly stop, at which time she too hit her brakes, but still collided with the rear end of the Explorer. The resulting combined damage to the vehicles totaled less than $2,000, the majority of which was for Rambo's car. Appellant's App. at 76–77, 114.

On September 17, 1999, Collins filed a complaint in which she sought compensation for the injuries, pain, suffering, an-

guish, and expenses "caused due to the negligence" of Rambo in the automobile accident. *Id.* at 29. At the conclusion of a trial held March 15–17, 2004, a jury returned a verdict in favor of the defense. The court entered judgment. On April 4, 2004, Collins filed a motion to correct error in which she argued that the court erred in giving a sudden emergency instruction over her objections when the instruction "lack[ed] evidentiary support and [was] contrary to the evidence." *Id.* at 43–47. Rambo filed a response. On September 7, 2004, the court held a hearing regarding the motion. Three days later, the court issued an order denying Collins' motion. We provide additional information where necessary.

### Discussion and Decision

The court read the following instructions to the jury:

Every driver of a motor vehicle using a public highway has the duty to exercise the care an ordinarily prudent person would use under the same or like circumstances. The failure to exercise such care is negligence.

At the time of the occurrence being considered in this case, Indiana statutes provided as follows:

First, Indiana Code Section 9–21–5–1: A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a . . . vehicle . . . on . . . a highway in compliance with legal requirements and with the duty of all persons to use due care.

Second, Indiana Code Section 9–21–8–14: A person who drives a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time interval between the vehicles and the condition of the highway.

If you find from a preponderance of the evidence that any party violated either of these statutes on the occasion in question, and the violation was without excuse or justification, such conduct would constitute fault to be assessed against that party.

At the time of the occurrence being considered in this case, an Indiana statute provided as follows:

Indiana Code Section 9–21–8–24: Movement with reasonable safety required for certain. A person may not slow down or stop a vehicle unless the movement can be made with reasonable safety.

If you find from a preponderance of the evidence that the Plaintiff violated this statute on the occasion in question and the violation was without excuse or justification, such conduct would constitute fault to be assessed against the Plaintiff.

*When a person is confronted with a sudden emergency not of the person's own making without sufficient time to determine with certainty the best course to pursue, that person is not held to the same accuracy of judgment as would be required of her if she had time for deliberation. Accordingly, if the person exercises such care as an ordinarily prudent person would exercise when confronted with a similar emergency, she is not negligent.*

*In this case if you find from the evidence that the defendant, Pauline Rambo, was confronted with a sudden emergency and that the defendant then pursued a course of action that an ordinarily prudent person would have pursued when confronted with the same or similar emergency, then you*

*may not assess fault to the defendant, Pauline Rambo.*

You are instructed that the duty imposed upon the defendant does not require her to use every possible precaution to avoid the accident with the Plaintiff nor that the Defendant should have employed any particular means which may appear after the accident would have avoided it nor was the Defendant required to make accidents impossible. The Defendant was only required to use such reasonable precaution to prevent the accident and would have been adopted by an ordinarily prudent person under the circumstances as they appeared prior to the accident.

Tr. at 428–31 (emphasis added); *see also* Appellant's App. at 28.

Collins asserts that the trial court abused its discretion and committed reversible error in giving the sudden emergency final instruction (emphasized in italics above) because the evidence did not support such an instruction. According to Collins, Rambo never saw the interfering van and was unaware of the emergency created for the vehicles in front of her. Stressing that Rambo's was the only vehicle in line to turn at the intersection that "managed to collide with the vehicle in front of her," Collins maintains that Rambo "created her own situation of peril by following too closely at too great a speed." Appellant's Br. at 10. Conversely, Rambo contends that the evidence

was conflicting and supported both arguments of plaintiff's counsel as well as defendant's counsel in support of the respective parties' positions and theories of the case. As such, it could not have been conclusively established as a matter of law that Rambo, by and through negligent conduct, created an emergency situation which caused the automobile accident.

Appellee's Br. at 5.

"[A] claim of error based on the giving of an instruction is reviewed for an abuse of discretion." *Aldana v. Sch. City of E. Chicago,* 769 N.E.2d 1201, 1209 (Ind. Ct.App.2002), *trans. denied.* "A trial court should give a tendered instruction if the instruction correctly states the law, the substance of the charge is not covered by other instructions, and the evidence supports the instruction." *Lashbrooks v. Schultz,* 793 N.E.2d 1211, 1213 (Ind.Ct. App.2003), *trans. pet. dismissed.* "[E]ach party to an action is entitled to have the jury instructed upon his particular theory of complaint or defense." *Sullivan v. Fairmont Homes, Inc.,* 543 N.E.2d 1130, 1137 (Ind.Ct.App.1989), *trans. denied; see also Barnard v. Himes,* 719 N.E.2d 862, 868 (Ind.Ct.App.1999), *trans. denied.*

Although the sudden emergency doctrine is often described as an affirmative defense [1], "it does not act to excuse fault, but rather defines the conduct to be expected of a prudent person in an emergency situation." *City of Terre Haute v. Simpson,* 746 N.E.2d 359, 367 (Ind.Ct.App. 2001), *trans. denied.* In particular, "[t]he doctrine of sudden emergency recognizes that a reasonable person innocently deprived of time to consider his actions does not always exercise the same accuracy of judgment as one who has had the opportu-

---

**1.** We would assert that rather than being an affirmative defense, the sudden emergency doctrine is more accurately termed a "special application" of the reasonable-actor-under-like-circumstances standard. *See* RESTATEMENT (SECOND) OF TORTS § 296 cmt. b (1965). An affirmative defense is a defendant's assertion of fact and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true. *See Paint Shuttle, Inc. v. Cont'l Cas. Co.,* 733 N.E.2d 513, 524 (Ind.Ct.App.2000), *trans. denied.*

nity for reflection." *Barnard,* 719 N.E.2d at 869. A trial court has a "duty to instruct" the jury regarding the sudden emergency doctrine *if* the evidence presented at trial supports the instruction. *Aldana,* 769 N.E.2d at 1210. "An instruction on sudden emergency is appropriate *only* when there is evidence" of three factors. *Linville v. Pressley,* 744 N.E.2d 974, 976 n. 1 (Ind.Ct.App.2001) (emphasis added), *trans. denied.* First, the actor must not have created or brought about the emergency through his own negligence. *Brooks v. Friedman,* 769 N.E.2d 696, 699–700 (Ind.Ct.App.2002), *trans. denied.* Second, the danger or peril confronting the actor must appear to be so imminent as to leave no time for deliberation. *Id.* "This, of course, includes the necessity of the actor perceiving the emergency." *Lovely v. Keele,* 166 Ind.App. 106, 109, 333 N.E.2d 866, 868 (1975). Third, the actor's apprehension of the peril must itself be reasonable. *Brooks,* 769 N.E.2d at 699–700.

Turning to the evidence in the case at bar, we note that on the day of the accident, the weather "was nice." Appellant's App. at 65. Rambo's car was traveling at five to ten miles per hour when she attempted the left turn. *Id.* at 57–58, 66. When Rambo saw Collins' Explorer's brake lights activate, Rambo hit the brakes of her car but still collided with Collins' vehicle. *Id.* at 59, 67, 74–75. Rambo testified, "I had no other choice but to stop." *Id.* at 59. Rambo never saw the van coming toward Collins because, in Rambo's words, "I'm sitting low and the way [Collins'] SUV is made, it's high, so I couldn't see what was in front of [Collins]." *Id.* at 67. Rambo learned about the van only after the collision as she was conversing with Collins. *Id.*

Although Rambo doubted that had she been farther away from Collins' Explorer she could have stopped in time to avoid a collision after it made its sudden stop, Rambo never provided any estimate of her following distance. *Id.* at 59–60, 83–84, 94, 96. Rambo's only statement that touched upon her following distance was equivocal: "I don't care if I was a car length and because it just happened quick." *Id.* at 60. Collins admitted that she was not watching Rambo's car at all times—especially once she observed the van; however, when pushed to provide an estimate of the following distance, Collins testified that Rambo's car was "very close," "right behind me," "almost riding my tail," "A foot; a half a foot," "[m]aybe half of a foot." *Id.* at 89–94, 104–05, 107, 110–11. The impact did not knock Collins' Explorer into the vehicle in front of her. *Id.* at 94–95. Indeed, Rambo agreed that, excluding her car, no vehicle in the turn lane collided with any other vehicle at the time of the incident. *Id.* at 61.

In analyzing this case, we must first clarify exactly what the sudden emergency was. The recklessly driven van could not have been a sudden emergency for Rambo because, as she admitted, Rambo was unaware of the van or its actions until Collins told her *after* the collision. Because at the time she hit her brakes and collided with the Explorer she was oblivious to the van, Rambo could not have perceived it as an imminent emergency. *See Lovely,* 166 Ind.App. at 109, 333 N.E.2d at 868 (noting that actor must perceive the emergency as a part of the second prong of the sudden emergency doctrine); *see also Baker v. Mason,* 253 Ind. 348, 350, 242 N.E.2d 513, 515 (1968) (holding that sudden emergency instruction was erroneously given where actor testified that she was unaware of emergency or peril until after impact). Instead, the emergency, if there was one facing Rambo, was the sudden stop of Collins' Explorer. With that in mind, we examine whether there was any evidence to support the three prongs of the sudden

emergency doctrine such that the giving of the instruction was proper.

■ The very first prong, requiring that the actor must not have created or brought about the emergency through his own negligence, is problematic. No evidence was presented that Rambo was driving behind Collins' Explorer at an appropriate distance. There is no indication that Rambo's following distance was one, let alone more, car lengths behind the Explorer. The only evidence was that she was "very close," perhaps as close as six inches. Rambo could not see around Collins' vehicle, thus implying that an even farther than normal following distance was appropriate. While Rambo opined that she did not think that she could have avoided the collision if her vehicle had been farther away (Appellant's App. at 59–60, 83–84, 94, 96) from the Explorer or had she been traveling more slowly (Id. at 58–60), such testimony is not credible. Obviously, if there had been several car lengths between her car and the Explorer and/or if she had been driving even less than five miles per hour, Rambo would have had time to stop her car without colliding with Collins' Explorer. Indeed, no other vehicle in the line of turning traffic collided when the van cut in. Cf. Linville, 744 N.E.2d at 976 at n. 1 (noting that defendant was the only one of at least thirty vehicles that failed to completely stop in construction zone and collide with another vehicle).

In sum, there is no evidence that Rambo maintained an appropriate distance and speed, that is, that she did not negligently create the situation. See City of Terre Haute, 746 N.E.2d at 368 (concluding that sudden emergency instruction was properly refused where "the evidence presented at trial shows that the 'emergency' that took the ambulance through the intersection under a red light was not sudden, and

was created by the ambulance driver."); cf. Sullivan, 543 N.E.2d at 1139 (sudden emergency instruction properly given where "ample evidence from which to reasonably infer that the emergency confronting [truck driver] was a product of the circumstances and not attributable to [truck driver's] own negligence" before the accident; evidence revealed truckdriver was driving within 35 m.p.h. speed limit at a distance of 200–300 feet behind car in front of him, but slid on pavement that appeared completely dry); see also Ind. Code § 9–21–8–14 (prohibiting a vehicle from following another vehicle too closely); Ind.Code § 9–21–5–1 (mandating restriction of speed as necessary to avoid a collision); see also Compton v. Pletch, 561 N.E.2d 803 (Ind.Ct.App.1990), adopted by 580 N.E.2d 664 (Ind.1991) (concluding that sudden emergency instruction should have been given where there was no allegation that defendant was speeding or violating traffic laws; rather, defendant made "split-second decision to switch lanes" when suddenly faced with car improperly stopped in busy, slick intersection). Without evidence to support one of the prongs, in this case the first prong, the sudden emergency instruction should not have been given. See Redd v. Indpls. Rys, Inc., 121 Ind.App. 472, 474, 97 N.E.2d 501, 502 (1951) (holding that actor's freedom from negligence is an essential element of sudden emergency doctrine).

■ Even if one could find some scintilla of evidence in the record that Rambo did not create her perilous situation by following at an inappropriately close distance and/or at a speed that was too great, there is no evidence to support the second prong of the doctrine. In examining the second prong, that the appearance of danger or peril must be so imminent that the actor had no time for deliberation, it is

helpful to review the rationale of the sudden emergency doctrine.

> Where one is confronted with a sudden emergency, without sufficient time to determine with certainty *the best course to pursue,* he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, *even though another course of conduct would have been more judicious, or safer, or might even have avoided the injury*[.]

*Gamble v. Lewis,* 227 Ind. 455, 464, 85 N.E.2d 629, 634 (1949) (emphases added). That is, the doctrine recognizes that the sudden emergency robs the actor of the time to thoughtfully reflect or deliberate *among various choices. See, e.g., id.* at 464–65, 85 N.E.2d at 634 (noting that "appellant driver, when she was suddenly faced with the emergency created by the appellee driving on the north side of the road, could have driven off the traveled portion of the highway on the north berm; she could have driven straight ahead in the hope that the appellee would turn to the south in time to have avoided the collision; she could have driven on the south half, as she did; she could have driven completely on the berm on the south side far enough to have missed the appellee when he turned south; and she could have applied her brakes at once in an effort to slow down while pursuing any one of these courses"); *see also* RESTATEMENT (SECOND) OF TORTS § 296 cmt. b (1965) (explaining "the court and the jury in determining the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision *between alternative courses of action* and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that this choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action.") (emphasis added).

In slamming on her brakes, Rambo did not make a "choice," among several options, that in hindsight was not as prudent as a different choice. No evidence was presented that she could have driven into the lane to the right of the turn lane. No evidence was introduced that she could have steered her car to the left. No evidence was shown that Rambo was far enough back to be able to steer her car around Collins' Explorer in *any* direction to avoid the collision. To the contrary, the only evidence as to following distance indicated that Rambo's vehicle was very close, perhaps less than a foot away from Collins vehicle. In sum, there was no evidence of any more prudent evasive maneuvers that could have been chosen if Rambo had had more time to ponder what to do upon being faced with the Explorer's sudden stop. The short distance between Rambo's car and Collins' Explorer as well as her speed foreclosed any other option besides reflexively slamming on the brakes. This is not the type of situation to which the doctrine was meant to apply. *See also Lashbrooks,* 793 N.E.2d at 1215 (favorably quoting case wherein sudden emergency instruction was deemed inappropriate because no evidence that actor had any options, made any decisions, etc.).

We stress that the sudden emergency doctrine was designed for those situations that are *unexpected. See Evans v. Palmeter,* 521 N.E.2d 316 (Ind.1988) (3–2 decision concluding that there was evidence to support sudden emergency instruction where truck driver, who had

been following at a 60–foot distance behind motorcycle that had been driving 55–60 miles per hour for approximately 25–30 miles, was suddenly faced with the "unexpected" slowing of motorcycle). That is, foreseeable events are not emergencies, and thus should not merit the giving of a sudden emergency instruction. *See Linville*, 744 N.E.2d at 976 at n. 1 (concluding that sudden emergency instruction should not have been given where defendant "failed to show that he kept a proper lookout while maintaining an appropriate speed and distance, but was nevertheless confronted with a sudden perilous situation such that he lacked time for deliberation. Stopped traffic in a construction zone is a *foreseeable* event rather than an 'emergency.' "). Stated otherwise, the sudden emergency doctrine is inapplicable where there is no evidence that the situation was "precipitated by some sudden event outside [the actor's] comprehension." *Lovings v. Cleary*, 799 N.E.2d 76, 79 (Ind.Ct. App.2003) (concluding that sudden emergency instruction was improperly given where defendant "was driving on curvy, hilly roads as snow and freezing rain fell. These conditions were apparent."), *trans. denied; see also Barnard*, 719 N.E.2d at 869 (concluding that sudden emergency instruction was correctly denied where "the snowy and icy conditions of the road were known to Barnard prior to the collision, and consequently, she was not confronted with a danger so imminent as to leave her with no time for deliberation.").

That vehicles would stop quickly in a line of traffic should not be outside the realm of a reasonable person's comprehension. It is hardly unforeseeable, unexpected, or unusual for drivers to have to adjust their vehicle's speed and following distance as a result of events ahead of them in a turning lane. Whether due to vehicles changing lanes, pedestrians entering crosswalks, obstructions in the road, slower accelerations through turns[2], and/or traffic lights changing colors, quick stops and slow-downs are a regular part of driving—especially on heavily traveled roadways. Because such stops/slow-downs should be anticipated, the sudden emergency doctrine does not apply in this case. *Cf. Aldana*, 769 N.E.2d at 1211 (concluding that sudden emergency instruction was properly read where there was at least some evidence that bus's drift off a road could have resulted from "a condition of the road that [bus driver] could not have reasonably anticipated.").

 Having already found no evidence to support either of the first two prongs, we choose not to address the third prong. As previously noted, instructing on an issue not supported by the evidence is error. Now we determine whether it was harmless error. Giving an instruction that is "not relevant to the issues and not applicable to the evidence" is grounds for reversal "only where it appears that the jury's verdict could have been predicated upon such an instruction." *Lashbrooks*, 793 N.E.2d at 1214. We acknowledge, "in a majority of cases in which a reversal was allowed because of the unwarranted giving of a 'sudden emergency' instruction, there were other errors on which the court also relied to support its decision" *Baker*, 253 Ind. at 353, 242 N.E.2d at 516 (citing various cases). However, "[t]his is not to say that, in a proper factual situation, an unwarranted 'sudden emergency' instruction could not in and of itself constitute a reversible error." *Id.* at 354, 242 N.E.2d at 517 (noting case where sudden emer-

---

**2.** Such slow accelerations may be the result of slow-to-respond (inattentive) drivers and/or vehicles with little "pick-up."

gency instruction was not warranted because emergency was created by party's own conduct).

To reiterate, the jury was instructed:

When a person is confronted with a sudden emergency not of the person's own making without sufficient time to determine with certainty the best course to pursue, that person is not held to the same accuracy of judgment as would be required of her if she had time for deliberation. Accordingly, if the person exercises such care as an ordinarily prudent person would exercise when confronted with a similar emergency, she is not negligent.

In this case if you find from the evidence that the defendant, Pauline Rambo, was confronted with a sudden emergency and that the defendant then pursued a course of action that an ordinarily prudent person would have pursued when confronted with the same or similar emergency, then *you may not assess fault to the defendant,* Pauline Rambo.

Appellant's App. at 28 (emphasis added). In other words, the jurors were told by the judge that if they found that Rambo's slamming on her brakes was something that an ordinarily prudent person would have done upon seeing the vehicle ahead suddenly stop, then the jury was precluded from assessing fault to Rambo. The instruction, which is mandatory in nature, completely disregards the alleged negligence that occurred *before* Rambo saw the Explorer's brake lights come on.

Again, there was no evidence that Rambo did not cause the peril by her following distance and speed. Moreover, due to *her* conduct, she had no other alternatives. Finally, the Explorer's quick stop should not have been unexpected. Given the evidence presented, the jury verdict could easily have been predicated upon the chal-lenged instruction. Indeed, it is quite likely that the jury was confused and misled by the inapplicable, yet mandatory, instruction. Accordingly, we reverse and remand for a new trial. *See Lashbrooks,* 793 N.E.2d at 1215 (reversing and remanding, and citing favorably to case that stated the "charge on sudden emergency was calculated to prejudice the rights of the plaintiffs and was harmful.")

Reversed.

DARDEN, J., and MATHIAS, J., concur.