Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 13 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KEVIN J. HINKLE**
Hinkle & Gooch, P.C.
Danville, Indiana

ATTORNEYS FOR APPELLEES:

**CHRISTOPHER E. CLARK**
**ANDREW B. JANUTOLO**
GOODIN ABERNATHY, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ELSA M. MCLAUGHLIN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1109-CT-862 |
| | ) | |
| JOHN C. CLARK and ZORE'S, INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
Cause No. 49D11-0604-CT-15489

**August 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

After a car accident involving multiple vehicles, Elsa McLaughlin filed a complaint against John Clark and Zores, Inc.[1] (collectively, the "Defendants"), contending Clark negligently operated a Zores, Inc., truck when he rear-ended Brandi Scobee and caused her to rear-end Elsa McLaughlin and her husband, James McLaughlin. A jury found Clark not at fault. Elsa raises one issue for our review: whether the trial court abused its discretion and committed reversible error by giving the jury a sudden emergency instruction. Concluding the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

Just past noon on Friday, April 30, 2004, Clark was operating a Peterbilt "semi wrecker" in the course of his employment for Zore's, Inc, on Interstate 465 in Indianapolis and towing another semi-tractor truck. When traffic in front of him came to a stop, Clark was unable to stop the wrecker before rear-ending a Chevy SUV driven by Brandi Scobee. Clark testified, "it was not a gradual slowing down of traffic. It was an immediate stoppage of traffic, okay? It wasn't stop and go, it wasn't – okay, it was immediate stop of traffic and when I realized that traffic has [sic] come to a complete stop in from [sic] of me and then, I am then on the brakes . . . ." Transcript at 32. Clark testified he had been following behind Scobee for approximately one to one and one-half miles and traveling approximately fifty-five miles per hour until the abrupt stop. Scobee's SUV then crashed into the McLaughlins' vehicle, in which James McLaughlin was the driver and Elsa a passenger. It was later

---

[1] Brandi Scobee, who was also named in the lawsuit, was later dismissed.

2

determined traffic came to an abrupt stop because Robert Hunter, who was ahead of the accident and carrying a large satellite dish in the bed of his pickup-truck, quickly pulled to the shoulder of the interstate when the satellite dish came loose and began dragging behind the truck. The traffic behind him, including Clark and the McLaughlins, was then forced to stop.

The McLaughlins[2] filed a complaint for damages, claiming, among other things, Clark negligently operated the semi wrecker and caused the McLaughlins' collision with Scobee, which resulted in Elsa requiring medical care in the amount of $254,427.49.

In their answer, the Defendants asserted the following defenses: Elsa's injuries were the direct and proximate result of the fault of a non-party, Robert Hunter; the McLaughlins may have failed to mitigate their damages; and "Clark was presented with a sudden emergency not of his own making which proximately caused the motor vehicle accident complained of by [the McLaughlins]." Appellant's Appendix at 69.

During a five-day jury trial, the parties submitted to the trial court proposed final jury instructions. The Defendants submitted a proposed instruction informing the jury of the sudden emergency doctrine. Elsa objected to the proposed sudden emergency instruction, both orally and in a written brief. The trial court refused to give the Defendants' version of the instruction, and instead it substituted its own sudden emergency instruction based on the Indiana Pattern Jury Instructions:

---

[2] James and Elsa McLaughlin filed suit together for their injuries and damages, but James died at a later date due to an unrelated condition. James's estate was substituted as a party and subsequently settled.

3

Defendant John C. Clark claims he was not negligent because he acted with reasonable care in an emergency situation. Defendant John C. Clark was not negligent if he proves the following by a preponderance of the evidence:
1. He was confronted with a sudden emergency;
2. The emergency was not of his own making;
3. He did not have sufficient time to deliberate; and
4. He exercised such care as an ordinarily prudent person would exercise when confronted with a similar emergency, even if it appears later that a different course of action would have been safer.

Id. at 37. In addition, the trial court issued an instruction stating that every driver has a duty to exercise the care an ordinarily prudent person would use and failing to do so is negligence; that drivers have a duty to maintain a proper lookout and failing to do so is negligence; that the Indiana Code prohibits following another vehicle more closely than is reasonable and prudent; that the Indiana Code prohibits driving at a speed greater than is reasonable and prudent under the conditions; and that if Clark failed to act reasonably under the circumstances or violated either statute, his conduct constituted negligence.

The jury determined Clark was not at fault and found in favor of the Defendants. Elsa now appeals. Additional facts will be supplied as appropriate.

Discussion and Decision

I. Standard of Review

When reviewing a trial court's decision to give or refuse to give a tendered jury instruction, we consider three factors: 1) whether the instruction correctly states the law; 2) if evidence in the record supports giving the instruction; and 3) whether other instructions adequately cover the substance of the instruction. Green River Motel Mgmt. of Dale, LLC v. State, 957 N.E.2d 640, 645 (Ind. Ct. App. 2011), trans. denied. When reviewing the

4

sufficiency of the evidence supporting an instruction, we only look to the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. Id. We will only reverse the trial court's decision to give or refuse an instruction if we conclude the trial court abused its discretion. Id. Even if a trial court gives an incorrect instruction on the law, the party seeking a new trial must demonstrate a reasonable probability that his or her substantial rights were adversely affected by the incorrect instruction for us to reverse the trial court's judgment. Penn Harris Madison Sch. Corp. v. Howard, 861 N.E.2d 1190, 1195 (Ind. 2007).

## II. Sudden Emergency Instruction

When a defendant seeks to have a trial court tender a sudden emergency instruction, the defendant must demonstrate there is evidence in the record supporting three facts: "1) the defendant must not have created or brought about the emergency through his own negligence; 2) the danger or peril confronting the defendant must appear to be so imminent as to leave no time for deliberation; and 3) the defendant's apprehension of the peril must itself be reasonable." Willis v. Westerfield, 839 N.E.2d 1179, 1184-85 (Ind. 2006) (citation omitted).

> The [sudden emergency] doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances. The basis of the doctrine is that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even

5

though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation.

Id. at 1184 (quotation and citations omitted). The sudden emergency doctrine is not an affirmative defense, but rather, "[t]he emergency is merely one of the circumstances to be considered in determining whether the actor's conduct was reasonable under all of the circumstances." Id. at 1186 (citation omitted).

Indiana Code section 9-21-5-1 provides,

A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

Further, Indiana Code section 9-21-8-14 provides, "[a] person who drives a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time interval between vehicles, and the condition of the highway."

Elsa argues the trial court abused its discretion by giving the jury a sudden emergency instruction because Clark failed to demonstrate the emergency was not of his own making. Specifically, she argues the evidence shows he was following Scobee too closely and that if he had not been doing so he could have stopped before hitting Scobee.

Elsa points to Collins v. Rambo, 831 N.E.2d 241 (Ind. Ct. App. 2005) as an analogous case. In Collins, Collins was forced to abruptly stop her vehicle when a van "came from another direction, disregarded a yield sign, and forced itself into the left-turning traffic

6

entering" the interstate. Id. at 243. Rambo, who was behind Collins, attempted to stop but still collided with the rear-end of Collins's vehicle. Collins brought suit against Rambo, and at trial the trial court allowed a sudden emergency instruction. The jury returned a verdict in favor of Rambo, and the court entered judgment. Collins appealed, arguing the trial court abused its discretion and committed reversible error by giving the sudden emergency instruction because the evidence did not support such an instruction but rather supported a finding that Rambo created the emergency by following too closely at too great a speed. Rambo, on the other hand, argued the evidence was conflicting and supported both a finding that Rambo brought the peril upon herself and a finding that she did not.

We first defined the sudden emergency before assessing the evidence. Because Rambo stated she did not see the van which jumped into the turn lane and forced Collins to suddenly stop, the van could not have been perceived as the imminent emergency. Rather, if an emergency existed, it was the abrupt stop of Collins's vehicle.

The evidence presented concerning Rambo's following distance and speed was limited. Rambo testified, "I don't care if I was a car length and because it just happened quick." Id. at 246. "Collins testified that Rambo's car was 'very close,' 'right behind me,' 'almost riding my tail,' 'A foot; a half a foot,' '[m]aybe half of a foot.'" Id. Excluding Rambo's car, no other vehicles in the turn lane collided with the vehicle in front of them. Because the only evidence presented suggested Rambo's car was very close to Collins, this court concluded the evidence was insufficient to establish that Rambo did not create the

7

emergency by her own negligence and, therefore, the trial court abused its discretion by giving a sudden emergency instruction.

As in Collins, we must first define what the sudden emergency was. The evidence reveals Clark did not see the satellite dish fall from Hunter's truck or Hunter's subsequent stop on the side of the highway. He stated he was unable to see past Scobee's vehicle. Therefore, the sudden emergency Clark faced was Scobee's vehicle coming to an abrupt and sudden stop.

Here, the evidence is not as unequivocal as it was in Collins. In Collins there was no evidence supporting the proposition that the sudden emergency doctrine applied. Here, Clark stated he was traveling approximately thirty to fifty feet behind Scobee's vehicle at fifty-five miles per hour when the traffic in front of him, including Scobee, abruptly stopped; that he was unable to see past Scobee's vehicle; that he unsuccessfully attempted to stop; and that he then tried to move into the lane to his right but was unable to because a Budweiser truck was next to him. Indiana State Police trooper Damon Martin, who investigated the accident, testified as an expert witness. Testifying about the details of his investigative report, Trooper Martin stated he did not assign any fault to Clark for following Scobee too closely or for any other reason. Rather, he determined the primary cause of the accident was Hunter's vehicle stopping after the satellite dish fell. Gilberto Rodriguez, the driver of the Budweiser truck, also testified. After discussing an appropriate following distance of three-to-four seconds behind a vehicle, Rodriguez stated that it is not always possible to keep such a distance on busy roads because "every time you put that kind of distance between another vehicle and

traffic there got to be somebody will jump right in, I mean, you'd be constantly hitting the brakes." Tr. at 234. Last, Scobee testified that up until traffic slowed before the accident, the interstate traffic had been light because it was in the early afternoon.

Although Elsa presented evidence to demonstrate Clark's negligence caused the emergency, there is evidence in the record to support giving a sudden emergency instruction and that is all that is required at that stage. The evidence does not have to be unequivocal that the sudden emergency was not created by Clark. As long as some evidence could support that conclusion, a sudden emergency instruction can properly be given to a jury. Brooks v. Friedman, 769 N.E.2d 696, 700-01 (Ind. Ct. App. 2002), trans. denied. The jury then has the role of weighing the evidence and concluding whether the sudden emergency doctrine applies and whether the defendant acted reasonably in the circumstances.

To the extent Elsa argues Indiana case law requires the trial court to find each fact necessary for a sudden emergency instruction to be supported by a preponderance of the evidence, we disagree. While the language used in Indiana case law to describe the standard for giving a sudden emergency instruction may not always be exactly the same, it has not been held that such facts must be shown by a preponderance of the evidence. The standard requires that some evidence be presented to support giving the instruction. See Willis, 839 N.E.2d at 1184 ("In Indiana, a defendant seeking a sudden emergency instruction must show that three factual prerequisites have been satisfied . . . ."); Collins, 831 N.E.2d at 246 ("A trial court has a duty to instruct the jury regarding the sudden emergency doctrine if the evidence presented at trial supports the instruction.") (quotation omitted; emphasis in

9

original); <u>Lovings v. Cleary</u>, 799 N.E.2d 76, 78 (Ind. Ct. App. 2003) ("An instruction on sudden emergency is appropriate only when there is evidence" of the three prerequisites.), <u>trans. denied</u>; <u>Brooks</u>, 769 N.E.2d at 700-01 ("While Friedman did present evidence to refute Brooks' sudden emergency argument, Brooks did present evidence to support each of the three prerequisites. Whether or not that evidence was believable or entitled to much weight was for the jury to decide, not the trial court."); <u>Linville v. Pressley</u>, 744 N.E.2d 974, 976 n.1 (Ind. Ct. App. 2001) ("An instruction on sudden emergency is appropriate only when there is evidence" of the three necessary facts.), <u>trans. denied</u>; and <u>Compton v. Pletch</u>, 561 N.E.2d 803, 807 (Ind. Ct. App. 1990) ("[A] trial court has a duty to instruct the jury concerning [the sudden emergency doctrine] if there is any evidence to support its application."), <u>adopted by</u>, 580 N.E.2d 664 (Ind. 1991).

While Elsa focuses her argument on the second prerequisite, that the emergency was not of Clark's own making, she also contests whether evidence was presented supporting the other prerequisites: that Clark was presented with an emergency and he did not have sufficient time to deliberate. Although Elsa presented evidence demonstrating the stop was not an emergency but rather a regular occurrence that should have been expected, the Defendants presented evidence to the contrary. Namely, Clark testified he had been traveling at fifty-five miles per hour when all of the sudden traffic came to a complete stop, and Scobee stated traffic had been light on Interstate 465. Similarly, due to the nature of the emergency, the evidence supports the fact that Clark had insufficient time to deliberate. He attempted to either maneuver his truck into another lane of traffic or stop, but he was unable

10

to do either. Based upon Clark's testimony that traffic abruptly came to a complete stop, there is support for the fact that Clark was unable to consider slowing down or creating more distance between his vehicle and Scobee's prior to the stop to prevent the accident from occurring. Thus, we conclude the Defendants presented the requisite evidence to support the giving of a sudden emergency instruction.

## Conclusion

The Defendants presented evidence to support giving a sudden emergency instruction, and the trial court did not abuse its discretion by giving such an instruction to the jury. We therefore affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.

11