Filed 10/8/24  Rickman v. FedEx Freight CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JOSEPH MELVIN RICKMAN, | |
| Plaintiff and Appellant, | G063921 |
| v. | (Super. Ct. No. CIVSB2028736) |
| FEDEX FREIGHT, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Michael A. Sachs, Judge. Reversed. Appellant's request for judicial notice. Denied.

The Law Offices of Jacob Emrani, Jacob Emrani, Gabriel A. Clift; Esner, Chang, Boyer & Murphy, Holly N. Boyer and Rowena J. Dizon for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez; Oium Reyen & Pryor, Robert C. Diemer, Hilary E. Youngblood; Hassard Bonnington and Hilary E. Youngblood for Defendant and Respondent.

\*　　　\*　　　\*

A person confronted by a sudden and unexpected emergency has little time to decide between alternative courses of action to avoid the emergency. The sudden emergency doctrine therefore recognizes that one confronted with a sudden peril is not expected to use the same judgment, in choosing between those alternative responses, that would be required in calmer, more deliberative moments. In other words, the existence of the sudden emergency is a factor to be taken into account in determining whether the actor exercised reasonable care under the circumstances.

During a sandstorm in which visibility was reported to be zero, a truck driven by Duane Vaughn Marker, an employee of FedEx Freight, Inc. (FedEx), struck the back of a truck driven by Joseph Melvin Rickman. Rickman sued FedEx for negligence. The trial court granted FedEx's motion for summary judgment based on the sudden emergency doctrine.[1]

We conclude the trial court erred by applying the sudden emergency doctrine to grant summary judgment in favor of FedEx for two independent reasons. First, FedEx failed to establish Marker was not negligent in causing, or contributing to the creation of, the sudden emergency. Second, FedEx failed to establish the doctrine applied on the facts of this case because there was no evidence Marker made a snap decision to respond to the peril in one way, rather than another. We reverse.

---

[1] The doctrine also has been referred to as the imminent peril doctrine or the acts in emergencies doctrine, as well as other names. We refer to it as the sudden emergency doctrine for consistency and ease of reference.

FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2019, Rickman was injured in a rear-end collision while driving eastbound in the number 2 lane on Interstate 40 (I-40). Rickman had been driving 55 miles per hour but slowed down due to a dust storm and visibility issues. Rickman was struck from behind by a FedEx truck driven by Marker. At the time of the impact, Rickman's vehicle was stopped.

Rickman filed a negligence lawsuit against FedEx.[2] FedEx moved for summary judgment, asserting the sudden emergency doctrine as a complete defense. After briefing and a hearing, the trial court granted the motion and entered judgment in favor of FedEx. The trial court denied Rickman's motion for a new trial, and Rickman filed a timely notice of appeal.

DISCUSSION

I.

STANDARD OF REVIEW

We review the grant of summary judgment de novo. (*Sales v. City of Tustin* (2021) 65 Cal.App.5th 265, 271.)

"'A trial court should grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Citation.] A defendant may establish its right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. [Citation.] Once the moving defendant has satisfied its burden, the burden shifts to the plaintiff to show

_____

[2] Rickman also sued Marker. The parties stipulated to dismiss Marker from the litigation without prejudice.

3

that a triable issue of material fact exists as to each cause of action. [Citation.] A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" [Citation.]

"'"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained. [Citations.]" [Citation.] We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party.'" [Citation.]

"'On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court.' [Citation.] '"As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed."'" (*Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 301 (*Wu*).)

II.

THE SUDDEN EMERGENCY DOCTRINE

The sudden emergency doctrine is described in the Restatement Second of Torts, at section 296: "In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is *a factor in determining the reasonable character of his choice of action*." (Italics added.) The comment to section 296 explains, in part: "The law does not require of the actor more than it is reasonable to expect of him under the circumstances which surround

4

him. Therefore, the court and jury in determining the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that his choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action." (Rest.2d Torts (1965) § 296, com. b.)

Prosser and Keeton's treatise on tort law explains the doctrine thus: "The courts have been compelled to recognize that an actor who is confronted with an emergency is not to be held to the standard of conduct normally applied to one who is in no such situation. An emergency has been defined as a sudden or unexpected event or combination of circumstances which calls for immediate action; and although there are courts which have laid stress upon the 'instinctive action' which usually accompanies such a situation, it seems clear that the basis of the special rule is merely that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation. The actor's choice 'may be mistaken and yet prudent.' [¶] There are, however, a number of limitations which have hedged the 'emergency' rule. It does not mean that any different standard is to be applied in the emergency. The conduct required is still that of a reasonable person under the circumstances,

as they would appear to one who was using proper care, and the emergency is to be considered only as one of the circumstances. An objective standard must still be applied, and the actor's own judgment or impulse is still not the sole criterion. The actor may still be found to be negligent if, notwithstanding the emergency, his acts are found to be unreasonable. The 'emergency doctrine' is applied only where the situation which arises is sudden and unexpected, and such to deprive the actor of reasonable opportunity for deliberation and considered decision. Furthermore, it obviously cannot serve to excuse the actor when the emergency has been created through the actor's own negligence, since he cannot be permitted to shield himself behind a situation resulting from his own fault." (Prosser & Keeton, Torts (5th ed. 1984) § 33, pp. 196–197, fns. omitted.)

California recognizes the sudden emergency doctrine. "[A] person who, *without negligence on his part*, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments." (*Leo v. Dunham* (1953) 41 Cal.2d 712, 714, italics added; see *Wu, supra*, 53 Cal.App.5th at pp. 301–302 [same]; *Pittman v. Boiven* (1967) 249 Cal.App.2d 207, 216 ["Where the evidence indicates that an individual was confronted with a sudden emergency, he is entitled to an instruction which advises the jury as to the amount of care which he was required to exercise while acting under its stress"]; see also CACI No. 452.) As one appellate court in this state recently held: "'The doctrine of imminent peril is properly applied only in cases where an unexpected physical danger is presented so suddenly as to

6

deprive the driver of his power of using reasonable judgment.'" (*Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 399 (*Shiver*).)

III.

FEDEX'S MOTION FOR SUMMARY JUDGMENT

In support of its motion for summary judgment, FedEx set forth the following undisputed material facts in its separate statement, each supported by relevant citations to evidence:

"1. Plaintiff's Complaint alleges two causes of action for Negligence against FedEx Freight, one for motor vehicle negligence, the other for general negligence, arising from his claim of a collision on I-40 eastbound, in San Bernardino County, on October 9, 2019." (Some capitalization omitted.)

"2. Specifically, by this action, Plaintiff claims that he slowed due to a dust storm and was rear-ended by a FedEx Freight vehicle." (Some capitalization omitted.)

"3. Plaintiff testified at his deposition that he had been trailing a Ford pickup truck at about 55 mph, and that they both slowed as they started to come into the dust storm."

"4. Plaintiff testified at his deposition that all of a sudden, he actually got into a dust storm, and that when the dust storm hit, he could not see another vehicle in front of the truck he was following."

"5. Plaintiff testified at his deposition that when he was driving in the dust storm, he did not put on his hazard lights."

"6. The FedEx Freight driver, Duane Marker, testified at his deposition that minutes before the collision, the weather was very windy and dusty." (Some capitalization omitted.)

7

"7. The FedEx Freight driver, Duane Marker, testified at deposition that: 'There was a dust storm, and it got completely dark. I could not see before impact. It went from a mild dust storm that I had been into hundreds of times to a black out that I have never been in before. And I described it like putting my hand over my eyes. I could not see anything. And I explained to him that the truck appeared, you know, within—I had no time to stop. I tried to stop, but the truck appeared. I knew I was going to hit him.'" (Some capitalization omitted.)

"8. Plaintiff testified that when the FedEx Freight driver came to his cab after the accident they were both still engulfed in the dust storm, and that it took another 20 to 30 minutes for the dust storm to clear." (Some capitalization omitted.)

In opposition to the motion for summary judgment, Rickman offered the following additional undisputed material facts, also supported by citations to evidence in the record:[3]

"Defendant's Driver, Duane Marker, testified that he had been driving in the dust storm for five miles prior to the collision occurring."

"Defendant's Driver, Duane Marker, testified that it was a protocol for truck drivers to reduce their speed when driving in a dust storm."

"Defendant's Driver, Duane Marker, testified that about a minute prior to the collision, he was driving at 55 [mph], at about 30 seconds prior, he was driving between 35-40 mph, and at about 3 seconds prior, he was driving at about 35 mph."

---

[3] The trial court overruled all of FedEx's objections to Rickman's evidence.

8

"Defendant's Driver, Duane Marker, testified that when he entered the dust storm, it was not very bad, and he did not change his speed limit much."

The trial court's order granting the motion for summary judgment reads, in relevant part, as follows: "The Court finds that Defendant FedEx Freight, Inc. has established that it is entitled to judgment as a matter of law under the doctrine of sudden emergency, such that it cannot be held negligent in any way relating to the subject collision with Plaintiff Joseph Rickman on October 9, 2019, and Plaintiff's Opposition and evidence does not create any question of material fact. The Court finds that there are no issues of material fact and Defendant established the necessary elements of a sudden emergency defense, as follows:

"1. There was a sudden and unexpected emergency situation in which someone was in actual or apparent danger of immediate injury;

"2. Defendant did not cause the emergency; and

"3. Defendant acted as a reasonably careful person would have acted in similar circumstances, even if it later appears that a different course of action would have been safer." (Some capitalization omitted.)

IV.

THE SUDDEN EMERGENCY DOCTRINE IS NOT A COMPLETE DEFENSE TO NEGLIGENCE UNDER THE FACTS OF THIS CASE

FedEx's moving papers failed to establish a complete defense to the negligence claims against it. First, the sudden emergency doctrine is not a complete defense to a claim of negligence. Rather, it is a part of the determination whether a defendant acted as a reasonable person under the circumstances. (See *Pittman v. Boiven, supra,* 249 Cal.App.2d at pp. 216–217; accord *City of Terre Haute v. Simpson* (Ind.Ct.App. 2001) 746 N.E.2d 359, 367

9

["Although the sudden emergency doctrine is generally described as an affirmative defense, it does not act to excuse fault, but rather defines the conduct to be expected of a prudent person in an emergency situation"]; *Helms v. Church's Fried Chicken, Inc.* (N.C.Ct.App. 1986) 344 S.E.2d 349, 352 ["'Sudden emergency' is not a legal defense which may operate to bar an action; it is only one factor to consider in making the reasonable person determination"]; *Collins v. Rambo* (Ind.Ct.App. 2005) 831 N.E.2d 241, 245 ["Although the sudden emergency doctrine is often described as an affirmative defense, 'it does not act to excuse fault, but rather defines the conduct to be expected of a prudent person in an emergency situation'"].)

Second, the sudden emergency doctrine only applies where the defendant has not acted negligently in causing (or contributing to) the sudden emergency. (*Shiver, supra*, 24 Cal.App.5th at p. 397 ["The doctrine applies where a defendant, acting with reasonable care, is suddenly and unexpectedly confronted by an emergency he did not cause"].) It is true that Marker did not cause or contribute to the dust storm, but that is not the sudden emergency in this scenario. The sudden emergency here was the change from a dust storm to a brownout that made it impossible for Marker to see in front of him.

There was evidence regarding Marker's conduct before the accident from which a reasonable trier of fact could conclude he was negligent. Rickman testified the dust storm was visible for five miles before he drove into it; similarly, Marker testified that when he got back on the road after taking a break, he drove about five miles before he hit the dust storm. This supports an inference that Marker also could see the dust storm well before he drove into it. Although Marker acknowledged it was "protocol" for drivers to reduce their speed when driving in a dust storm, he testified he

10

*maintained* his speed at 55 miles per hour even after he entered the dust storm and for some time thereafter. Indeed, Marker testified that he drove through the dust storm for five miles before the collision occurred and that he did not begin to brake until one minute prior to the collision. In other words, Marker did not slow down in the dust storm until the storm worsened to the point of brownout. Marker did not testify he was attempting to pull off the highway or otherwise come to a stop when the accident occurred.

Although Marker's conduct did not cause the dust storm, how he acted after he encountered it—including his speed before and after it became a brownout—is still relevant. There are material disputed facts whether Marker was negligent in not slowing his vehicle sooner and whether his failure to slow his speed upon encountering the dust storm contributed to the creation of the perilous situation. In other words, FedEx did not establish Marker was not negligent before Rickman's vehicle suddenly became visible in front of his truck during the brownout.

Two cases from California courts have affirmed orders granting summary judgment based on the sudden emergency doctrine, but each is factually distinguishable from this case.

In *Shiver, supra*, 24 Cal.App.5th 395, defendant Laramee was driving a tractor-trailer in the far right lane of the freeway. (*Id.* at p. 397.) Three vehicles entered the freeway via the entrance ramp on the right and merged into the far right lane in front of Laramee. (*Ibid.*) In an apparent act of road rage, the first of the three cars slammed on its brakes. (*Ibid.*) The second car braked hard to avoid hitting the first car, and the third car braked hard to avoid hitting the second car. (*Ibid.*) Laramee braked, but was unable to stop or take evasive action before hitting the third car, driven by plaintiff Shiver. (*Ibid.*) Shiver sued Laramee for negligence. (*Ibid.*)

11

Laramee moved for summary judgment under the sudden emergency doctrine. (*Shiver, supra*, 24 Cal.App.5th at p. 397.) The trial court acknowledged the doctrine rarely applies on summary judgment (*id.* at p. 397), but granted the motion, noting: "A freeway driver with the right of way is not required to anticipate an act of road rage that unexpectedly causes merging traffic in front of him to come to almost a dead stop." (*Id.* at p. 397.) """The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.""" (*Id.* at p. 402.) The court concluded Laramee had not been negligent before the first car slammed on its brakes and that Laramee's actions after the first car slammed on its brakes were reasonable under the circumstances.

By contrast, here FedEx did not ask the trial court to determine that Marker was not negligent before the dust storm turned to a brownout; nor did it ask the trial court to determine whether Marker's actions during the brownout were negligent. FedEx suggests that once the emergency arose, Marker's actions were automatically non-negligent. That is not a proper application of the sudden emergency doctrine.

In *Wu, supra*, 53 Cal.App.5th 298, two cars were travelling in the same direction in the same lane on the freeway, both at about 70 miles per hour. (*Id.* at p. 300.) The driver of the first car, Wu, observed a third car stopped in that lane 20 to 30 car lengths ahead and changed lanes to avoid a crash. (*Ibid.*) The second car, driven by Al-Kuraishi, however, crashed into the stopped car, leading to Al-Kuraishi's death. (*Ibid.*) Al-Kuraishi's family sued Wu (and others) for negligence. (*Ibid.*) The trial court granted Wu's

12

summary judgment motion on the grounds of the sudden emergency doctrine. (*Ibid.*)

The appellate court affirmed. "Under the 'sudden emergency' or 'imminent peril' doctrine, 'a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments.' [Citation.] 'A party will be denied the benefit of the doctrine . . . where that party's negligence causes or contributes to the creation of the perilous situation.'" (*Wu, supra*, 53 Cal.App.5th at pp. 301–302.) Al-Kuraishi's family argued Wu created the emergency by changing lanes so late that Al-Kuraishi was unable to see the stopped car and respond. (*Id.* at p. 302.) The appellate court agreed with Wu that the sudden emergency was the stopped car in the lane in which the two cars were traveling at highway speeds. "An emergency or peril under the sudden emergency or imminent peril doctrine is a set of facts presented to the person alleged to have been negligent. It is *that* actor's behavior that the doctrine excuses. [Citations.] It is irrelevant for purposes of the sudden emergency doctrine whether Wu's lane change created a dangerous situation for Al-Kuraishi or anyone else; the only relevant emergency is the one *Wu* faced." (*Ibid.*)

In contrast to *Shiver* and *Wu*, FedEx failed to meet its burden on summary judgment of showing Marker was not negligent in causing or contributing to the emergency; it therefore cannot invoke the sudden emergency doctrine.

13

## V.

### FEDEX'S MOTION FOR SUMMARY JUDGMENT DID NOT ESTABLISH THE SUDDEN EMERGENCY DOCTRINE APPLIED ON THE FACTS OF THIS CASE

In its motion for summary judgment, FedEx failed to establish the sudden emergency doctrine applied to these facts because there was no evidence that Marker was required to immediately choose between two or more possible actions when the sudden peril arose. Marker testified at his deposition: "There was a dust storm, and it got completely dark. I could not see before impact. It went from a mild dust storm that I had been into hundreds of times to a black out that I have never been in before. [¶] And I described it like putting my hand over my eyes. I could not see anything. And I explained to him that *the truck appeared*, you know, within—*I had no time to stop. I tried to stop, but the truck appeared. I knew I was going to hit him*." (Italics added.) Marker's testimony precluded the sudden emergency doctrine from coming into play.

Even assuming the evidence offered by FedEx was sufficient to invoke the sudden emergency doctrine and shift the burden on summary judgment to Rickman to show it did not apply, Rickman's evidence in opposition was sufficient to meet that burden. Through Marker's deposition testimony, Rickman showed that established protocols require truck drivers to reduce their speed when driving in a dust storm; that Marker did not reduce his speed when he entered the dust storm; that Marker had been driving through the dust storm for three or four miles before starting to slow down; and that Marker was driving 55 miles per hour one minute before the collision, 35 to 40 miles per hour 30 seconds before the collision, and 35 miles per hour three seconds before the collision.

Rickman also offered into evidence the traffic collision report, which attributed the following statement to Marker: "[Marker] observed there were high winds and blowing sand which increased in intensity as he proceeded eastbound. [Marker] lost visibility to the front of his vehicle as the blowing sand conditions increased to an almost brown out. [Marker] reacted by applying [the FedEx truck's] brakes. A couple of seconds later, [Marker] *felt the front of [the FedEx truck] impact another vehicle.*" (Italics added.) There was no evidence Marker was forced to choose between alternative courses of action once Rickman's vehicle suddenly appeared immediately in front of his truck. To the contrary, the evidence shows the short distance between Rickman's vehicle and Marker's truck and Marker's speed "foreclosed any other option besides reflexively slamming on the brakes." (*Collins v. Rambo, supra*, 831 N.E.2d at p. 248.) Thus, FedEx did not show the sudden emergency doctrine was applicable.

In *Staggs v. Atchison, Topeka & S.F. Ry. Co.* (1955) 135 Cal.App.2d 492, the California Court of Appeal held that the trial court erred by instructing the jury regarding the sudden emergency doctrine where the defendant's agents "could not have avoided the accident or in any manner have lessened [the plaintiff's] injuries" after the danger was observed. (*Id.* at p. 503.) The court noted that the instruction should only be given "'where *at least two courses of action are present after the danger is perceived and where no negligence is chargeable to the person to whom those courses of action are open.*'" (*Id.* at pp. 502–503; see *Perry v. Piombo* (1946) 73 Cal.App.2d 569, 572; *Connor v. Pacific Greyhound Lines* (1951) 104 Cal.App.2d 746, 757.)

Many other jurisdictions applying section 296 of the Restatement Second of Torts reach the same conclusion. In *Miller v. Porter* (Conn. 1968) 242 A.2d 744, the Connecticut Supreme Court held the sudden emergency

15

doctrine did not apply where the defendant had no choice about how to act once the emergency arose. "There are no claims of proof advanced which indicate that the defendant was able to choose any course of action after the emergency arose. From all that appears, events occurred with such rapidity that the defendant had no opportunity to do anything. Indeed, we note that the defendants based their argument to the jury, in part, on the theory of unavoidable accident. [Citation.] [¶] If there are claims of proof which indicate that an opportunity existed, however brief, to choose a course of action after the emergency arose, a charge on the sudden emergency doctrine is justified. [Citation.] If, however, there are no claims of proof which show such an opportunity existed, the court should not charge on the doctrine of sudden emergency. [Citations.] The present case falls within the latter situation, and the trial court erred in charging on the doctrine of sudden emergency." (*Id.* at p. 746.)

In *Collins v. Rambo, supra*, 831 N.E.2d 241, plaintiff Collins and defendant Rambo were in their vehicles in a controlled left turn lane. (*Id.* at p. 243.) Both vehicles proceeded forward when the green arrow was illuminated. (*Ibid.*) When a recklessly-driven van disregarded posted signs and forced itself into the left-turning traffic (*ibid.*), Collins braked suddenly; Rambo also slammed on her brakes, but collided with the rear of Collins's vehicle. (*Ibid.*) A jury found in Rambo's favor on Collins's negligence complaint, after being instructed regarding the sudden emergency doctrine. (*Id.* at p. 244.) The appellate court reversed the judgment. "Where one is confronted with a sudden emergency, without sufficient time to determine with certainty *the best course to pursue*, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent man would

16

exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, *even though another course of conduct would have been more judicious, or safer, or might even have avoided the injury*[.] [¶] . . . [T]he doctrine recognizes that the sudden emergency robs the actor of the time to thoughtfully reflect or deliberate *among various choices*." (*Id.* at p. 248.)

"In slamming on her brakes, Rambo did not make a 'choice,' among several options, that in hindsight was not as prudent as a different choice. No evidence was presented that she could have driven into the lane to the right of the turn lane. No evidence was introduced that she could have steered her car to the left. No evidence was shown that Rambo was far enough back to be able to steer her car around Collins' Explorer in *any* direction to avoid the collision. To the contrary, the only evidence as to following distance indicated that Rambo's vehicle was very close, perhaps less than a foot away from Collins vehicle. In sum, there was no evidence of any more prudent evasive maneuvers that could have been chosen if Rambo had had more time to ponder what to do upon being faced with the Explorer's sudden stop. The short distance between Rambo's car and Collins' Explorer as well as her speed foreclosed any other option besides reflexively slamming on the brakes. This is not the type of situation to which the doctrine was meant to apply." (*Collins v. Rambo, supra*, 831 N.E.2d at p. 248.)

Similarly, in *Bardwell v. McLaughlin* (Ark. 1975) 520 S.W.2d 277, the defendant had less than one-half second to react when he saw the decedent in the roadway, given his speed and the normal reaction time. The court concluded the sudden emergency doctrine did not apply because the defendant "had no chance to swerve or brake his vehicle." (*Id.* at p. 278.) "The basis of the sudden emergency doctrine is that the driver be in a stressful

17

situation which dictates a quick decision as to possible courses of conduct. [¶] . . . [¶] The sudden emergency instruction given to the jury in the case at bar is cast in terms of 'judgment.' The driver must be aware of the danger in a situation where he has a choice of action. In *Howard v. Tri-State Ins. Co.*, 253 Ark. 405, 486 S.W.2d 76, 77 (1972), [the Arkansas Supreme Court] held it error for the trial court to give a sudden emergency instruction where there was 'not one iota of testimony of either driver finding himself in an emergency situation and taking action accordingly.' There, neither driver perceived a situation in sufficient time to indicate an emergency and make a decision between alternative courses of action. Likewise, in the case at bar, it was physically impossible for appellee to make a decisional act after seeing the decedent. Only the instructions on comparative negligence are applicable in this factual situation." (*Id.* at pp. 278–279; accord *DiCenzo v. Izawa* (Hawaii 1986) 723 P.2d 171, 179, citing Prosser & Keeton, Torts, *supra*, § 33 at p. 196, italics added [rationale for sudden emergency rule is "'the actor is left no time for adequate thought, or is reasonably so disturbed or excited that [he] cannot weigh alternative courses of action, and must make a *speedy decision based very largely upon impulse or guess*'"]; *Myhaver v. Knutson* (Ariz. 1997) 942 P.2d 445, 447 ["in the absence of antecedent negligence, a person confronted with a sudden emergency that deprives him of time to contemplate the best reaction cannot be held to the same standard of care and accuracy of choice as one who has time to deliberate"]; *Caristo v. Sanzone* (N.Y. 2001) 750 N.E.2d 36, 38 ["The emergency instruction is, therefore, properly charged where the evidence supports a finding that the party requesting the charge was confronted by 'a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration'"]; *Rustin v. Smith* (Md.Ct.App. 1995) 657 A.2d 412, 415 ["For

18

the 'acts in emergencies' instruction to be applicable, however, the emergency cannot arise from the defendant's own conduct, and there must be some conduct or action on the part of the defendant in response to the emergency"].)

## VI.

### REQUEST FOR JUDICIAL NOTICE

Rickman requests that we take judicial notice of (1) a page from the National Weather Service website entitled "Dust Storms and Haboobs," and (2) a page from the Arizona Department of Transportation website entitled "Why you should turn off your vehicle's lights when pulling aside for dust." Rickman contends the documents are subject to judicial notice under Evidence Code section 452, subdivision (h) because they contain "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (*Ibid.*) FedEx opposes the request for judicial notice.

We deny the request for judicial notice. Neither of these documents was presented to the trial court. Even where documents are proper subjects of judicial notice, "'courts have cautioned against judicially noticing matters that were not before the trial court. "[A]s a general rule the [appellate] court should not take . . . [judicial] notice if, upon examination of the entire record, it appears that the matter has not been presented to and considered by the trial court in the first instance." [Citations.] Such a rule prevents the unfairness that would flow from permitting one side to press an issue or theory on appeal that was not raised [in the trial court].'" (*Carleton v. Tortosa* (1993) 14 Cal.App.4th 745, 753–754, fn. 1.)

19

## DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.